IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 33701-4-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | PUBLISHED OPINION |
| | ) | |
| SERGIO MAGANA, JR. | ) | |
| | ) | |
| Appellant. | ) | |

PENNELL, J. — A criminal defendant is entitled to a fair trial, but not a perfect one. Some of the evidence admitted during Sergio Magana, Jr.'s trial for third degree rape should have been excluded. Nevertheless, reversal of Mr. Magana's conviction is unwarranted because none of the evidence was prejudicial. We therefore affirm Mr. Magana's conviction, but reverse several technical aspects of Mr. Magana's sentence for correction on remand.

## FACTS

Fourteen-year-old Y.L. first met Sergio Magana, Jr. through Facebook. Y.L. described Mr. Magana as being in his 20's. After exchanging text messages, Y.L. and Mr. Magana made plans to meet at Y.L.'s home. Mr. Magana had expressed a desire to be alone with Y.L. When the day they planned to meet arrived, Mr. Magana went inside Y.L.'s home and forcibly raped her. Not long after leaving, Mr. Magana texted and told Y.L. not to mention his name and to delete all of their text messages because her "age scare[d] him." 1 Verbatim Report of Proceedings (July 23, 2015) at 134.

After approximately two weeks, Y.L. reported Mr. Magana's conduct to the police. Y.L. identified Mr. Magana from a photo lineup and submitted her phone so text messages could be extracted.

The police then began looking for Mr. Magana. After about six weeks, Mr. Magana made contact with the police and spoke to a detective over the telephone. The detective described Mr. Magana as "fishing for information." *Id.* at 97. During the call, Mr. Magana arranged to meet with the police. However, he never showed up for his appointment. About a month later, Mr. Magana finally met with a police detective in person. He was advised of his *Miranda*[1] rights and acknowledged that he had met Y.L.

---

[1] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

2

No. 33701-4-III
*State v. Magana*

over Facebook, but he denied having intercourse.

Mr. Magana was charged with one count of third degree rape of a child.

Following a mistrial and then a second trial, he was found guilty by a jury and sentenced

by the trial court. A number of community custody conditions were imposed as part of

Mr. Magana's sentence. Mr. Magana appeals.

## ANALYSIS

*Challenges to the jury's guilty verdict*

*Evidence of pre-arrest silence*

Mr. Magana argues the State violated his right against self-incrimination by

eliciting testimony regarding his failure to appear for his initial police interview. He

claims this was an improper comment on his right to silence, in violation of the Fifth

Amendment to the United States Constitution. In support of his position, Mr. Magana

cites Washington Supreme Court cases which hold the Fifth Amendment rule on silence

applies to a suspects' interactions with police prior to arrest. *State v. Easter*, 130 Wn.2d

228, 922 P.2d 1285 (1996); *State v. Lewis*, 130 Wn.2d 700, 927 P.2d 235 (1996).

While the Washington cases cited by Mr. Magana provide persuasive support, they

are ultimately unhelpful as they have been overruled by subsequent precedent from the

United States Supreme Court. In *Salinas v. Texas*, 133 S. Ct. 2174, 186 L. Ed. 2d 376

3

(2013), the United States Supreme Court addressed a long-standing conflict between various state and federal courts over whether the Fifth Amendment bars introduction of a defendant's pre-arrest silence as evidence of guilt. In a 5-4 plurality decision, the Court found no prohibition. *Salinas* did not resolve all questions regarding how the Fifth Amendment rule applies prior to arrest. Three justices recognized the Fifth Amendment's protections might apply if explicitly invoked; the other two justices in the plurality concluded no constitutional issue could apply outside of a custodial interview. But this difference is immaterial here. The rule from *Salinas* is that, absent an express invocation of the right to silence, the Fifth Amendment is not an obstacle to the State's introduction of a suspect's pre-arrest silence as evidence of guilt.

*Salinas* controls Mr. Magana's case. Legally, this is not an area where our state's constitution affords greater protection than the federal constitution. *Easter*, 130 Wn.2d at 235; *State v. Earls*, 116 Wn.2d 364, 375, 805 P.2d 211 (1991). Accordingly, after *Salinas* the Fifth Amendment analysis set forth in *Easter*, *Lewis*, and their progeny is no longer good law. Factually, Mr. Magana was not under arrest or any sort of police custody. His scheduled police interview was voluntary. To the extent Mr. Magana's failure to appear for the interview was relevant, the State was entitled to present this evidence.

*Violation of the in limine ruling*

Mr. Magana appeals the trial court's failure to declare a mistrial after a police witness testified, in violation of an order in limine, to a statement made by Mr. Magana prior to being read his *Miranda* rights.[2] We review the trial court's decision for abuse of discretion, keeping in mind that a mistrial should only be granted "when the defendant has been so prejudiced that nothing short of a new trial can insure that the defendant will be tried fairly." *State v. Johnson*, 124 Wn.2d 57, 76, 873 P.2d 514 (1994). Relevant to the analysis is the seriousness of the alleged error, whether erroneously factual information was cumulative, and whether a curative instruction was given. *Id.*

We are satisfied the trial court did not abuse its discretion in denying Mr. Magana's motion. The transcript confirms the officer's statement was not elicited purposefully. It was not repeated to avoid reemphasizing it to the jury. And the trial court gave a curative instruction. Also important to our analysis, the challenged testimony was not particularly prejudicial. Subsequent to *Miranda*, Mr. Magana had offered to assist law enforcement with local criminal cases. This testimony did not violate the in limine order and was properly admitted. The only pre-*Miranda* statement at issue was the clarification that Mr. Magana wanted to help with narcotics cases. This

---

[2] The statement in question was made during Mr. Magana's in-person interview.

added detail was of minor significance. There was no indication Mr. Magana was involved in drugs or that the assault on Y.L. was drug related. Given all these circumstances, the momentary violation of the trial court's in limine order by the State's witness was not sufficiently significant to require a mistrial.

*Admission of business records*

Mr. Magana contends the State's photo lineup exhibit was hearsay and admitted into evidence without proper foundation. The State counters that the exhibit was a properly authenticated business record. We review the trial court's evidentiary decision for abuse of discretion. *Salas v. Hi-Tech Erectors*, 168 Wn.2d 664, 668, 230 P.3d 583 (2010).

The exhibit at issue consists of three pages. The first page is an array of six hand-numbered photos, one of which depicts Mr. Magana. The second page is entitled "Lineup ID Report." Ex. 1. It appears to be a computer-generated report that documents biographical information, including dates of birth, for the six individuals depicted on the photo array. The third page is a copy of the written admonishment form Y.L. signed prior to reviewing the photo array. During the photo identification process, Y.L. reviewed the first and third pages of the exhibit, but not the second.

At trial, the State's law enforcement witness testified about how he created the six photo array contained on page one of the exhibit. He also explained how Y.L. signed the admonishment form on page three. However, no testimony was presented regarding the creation of the Lineup ID Report included on page two. In fact, it appears submission of the Lineup ID Report as part of the exhibit was almost an oversight. After eliciting testimony regarding the photo array and admonishment form, the State successfully moved for admission of the exhibit over Mr. Magana's hearsay objection. The State then asked the officer whether the exhibit referenced the age of the individuals depicted in the photo array. At first, the officer said no. But when the State pointed out that the exhibit had a second page, the officer agreed that the exhibit contained information regarding age. Defense counsel objected to this line of questioning, but was overruled because the exhibit had already been admitted.

A document may be admitted as a business record as long as a witness testifies to the document's identity and mode of preparation, and explains that the document "was made in the regular course of business, at or near the time of the act, condition or event . . . ." RCW 5.45.020; ER 803(6). While the State's witness adequately testified as to the creation of the photo array and the admonishment form, the same was not true for the Lineup ID Report. The State presented no testimony about where the Lineup ID

Report came from or how it was made. On its face, the Lineup ID Report appears to have been created in an entirely different way than the photo array and admonishment form. The State was required to establish a foundation for the Lineup ID Report prior to admission as a business record. The failure to do so was error.

The fact that the Lineup ID Report was sandwiched between two properly admitted records as part of a single exhibit does not excuse the State's failure to establish an individual evidentiary foundation. To the contrary, the manner in which the State submitted the Lineup ID Report into evidence is troubling. The record before this court does not clarify whether the trial court, opposing counsel, or even the witness were aware that the Lineup ID Report had been included as part of the State's exhibit until after admission. In the future, counsel for the State shall take greater caution in ensuring that evidentiary foundations are met for all pieces of evidence, regardless of whether the evidence is grouped together as one exhibit.

Because no foundation was laid for the Lineup ID Report, it was improperly admitted as a business record. The question then becomes whether this error requires reversal. Since Mr. Magana does not raise a constitutional challenge, we engage in a nonconstitutional harmless error analysis. "Under this standard, an error in the admission of evidence is 'not prejudicial unless, within reasonable probabilities, the outcome of the

8

trial would have been materially affected had the error not occurred.'" *State v. Anderson*, 112 Wn. App. 828, 837, 51 P.3d 179 (2002) (*quoting State v. Bourgeois*, 133 Wn.2d 389, 403, 945 P.2d 1120 (1997)).

The information erroneously included in the Lineup ID Report was significant. The charge against Mr. Magana required the State to prove that he was at least four years older than Y.L. RCW 9A.44.079(1). Y.L. testified that she was 14. This meant the State needed to prove Mr. Magana was over 18. The Lineup ID Report recited Mr. Magana's date of birth and thereby provided the State direct proof that Mr. Magana met the four-year age difference.

While erroneous introduction of the Lineup ID Report could have endangered the State's case, it ultimately did not. The evidence of more than a four-year age difference between Mr. Magana and Y.L. was overwhelming. Apart from Y.L.'s testimony that Mr. Magana was in his 20's and the jury's ability to observe Mr. Magana's appearance at trial as a man in his mid-20's, Mr. Magana's own words satisfied much of the State's burden. In both an oral statement to Y.L. and a text message, Mr. Magana expressed concern that he might get in trouble because of Y.L.'s young age. These are not the type of comments that would have come from someone under 18. Given the entirety of the evidence, the erroneous inclusion of the Lineup ID Report did not impact the jury's verdict.

*Cumulative error doctrine*

Mr. Magana argues that even if the errors in his case are considered harmless when viewed in isolation, their cumulative impact warrants reversal. We disagree. The combined impact of the State's two trial errors did not deprive Mr. Magana of a fair trial. *See State v. Grieff*, 141 Wn.2d 910, 929, 10 P.3d 390 (2000). The first error, involving the in limine violation, had little evidentiary significance. More importantly, it had no bearing on the second error, which raised questions about the State's proof of Mr. Magana's age. Because of this disconnect, the two errors are not more prejudicial when considered in combination than alone. The cumulative error doctrine does not provide Mr. Magana an avenue for relief.

*Sentencing errors*

*No-contact order*

Mr. Magana's judgment prohibits him from having contact with either Y.L. or her immediate family for ten years. Because Mr. Magana was convicted of a Class C felony, the maximum term that could have been imposed was five years. RCW 9A.20.021(1)(c). The State agrees that remand is required for correction.

*Jury demand fee*

The parties dispute whether Mr. Magana should have been ordered to pay one jury

10

fee or two. The issue arises because Mr. Magana's case involved two sets of jurors. The first set was dismissed after a mistrial. The second set of jurors rendered Mr. Magana's guilty verdict.

Under Washington law, every person convicted by a jury in superior court is liable for payment of a jury demand fee. RCW 10.46.190. The statute provides, "Upon conviction in criminal cases *a* jury demand charge of . . . two hundred fifty dollars for a jury of twelve may be imposed as costs under RCW 10.46.190." RCW 36.18.016(3)(b) (emphasis added). By use of the singular term "a" the statute plainly contemplates only one jury demand fee per conviction. The trial court's imposition of two $250 fees was error and must be corrected on remand.

*Community custody conditions*

Mr. Magana challenges five of his community custody conditions. He argues the conditions are vague, overbroad, or not crime related. Community custody conditions are reviewed for abuse of discretion. *State v. Irwin*, 191 Wn. App. 644, 652, 364 P.3d 830 (2015). The abuse of discretion standard applies whether this court is reviewing a crime related community custody condition, or reviewing a community custody condition for being unconstitutionally overbroad or vague. *See Irwin*, 191 Wn. App. at 652, 656; *State v. Sanchez Valencia*, 169 Wn.2d 782, 791-92, 239 P.3d 1059 (2010) (vagueness); *State v.*

11

*Cordero*, 170 Wn. App. 351, 373, 284 P.3d 773 (2012) (crime related); *State v. Bahl*, 137 Wn. App. 709, 714-15, 159 P.3d 416 (2007) (overbreadth), *reversed on other grounds*, 164 Wn.2d 739, 193 P.3d 678 (2008).

We begin our analysis with community custody condition 14:

Do not frequent parks, schools, malls, family missions or establishments where children are known to congregate or other areas as defined by supervising CCO [community corrections officer], treatment providers.

Clerk's Papers at 17.

Mr. Magana argues this condition is unconstitutionally vague. The guarantee of due process contained in the Fourteenth Amendment to the United States Constitution and article 1, section 3 of the Washington Constitution requires that laws not be vague. *Irwin*, 191 Wn. App. at 652; *Bahl*, 164 Wn.2d at 752-53. A community custody condition is not vague so long as it: (1) provides ordinary people with fair warning of the proscribed conduct, and (2) has standards that are definite enough to "'protect against arbitrary enforcement.'" *See Bahl*, 164 Wn.2d at 752-53 (quoting *City of Spokane v. Douglass*, 115 Wn.2d 171, 178, 795 P.2d 693 (1990)).

We agree with Mr. Magana that condition 14 is problematic because it affords too much discretion to Mr. Magana's CCO. As explained in *State v. Irwin*, 191 Wn. App. at 654-55, a community custody condition that empowers a CCO to designate prohibited

12

spaces is constitutionally impermissible because it is susceptible to arbitrary enforcement. This characterization applies fully to condition 14. As written, condition 14 does not place any limits on the ability of Mr. Magana's CCO to designate prohibited locations. While the condition lists several prohibited locations and explains that the list covers places where children are known to congregate, the CCO's designation authority is not tied to either the list or the explanatory statement. As written, the discretion conferred on the CCO by condition 14 is boundless. We therefore strike condition 14 as vague and remand for resentencing.[3]

Mr. Magana's remaining challenges to his community custody provisions are unpersuasive. Because Mr. Magana was convicted of a sex offense, conditions regarding access to X-rated movies, adult book stores, and sexually explicit materials were all crime related and properly imposed. In addition, because Mr. Magana used social media to contact Y.L., conditions restricting internet access and social media sites were permissible. These conditions were not overly oppressive. They allow for computer and internet usage necessary for employment. The trial court acted within its discretion in imposing these conditions.

---

[3] We disagree with Mr. Magana's other challenges to condition 14. Because he committed a crime against a child, a properly worded condition restricting Mr. Magana's access to areas where children are known to congregate would have been appropriate.

No. 33701-4-III
*State v. Magana*

CONCLUSION

We affirm Mr. Magana's convictions, but remand to the trial court for resentencing not inconsistent with this opinion.

_____
Pennell, J.

WE CONCUR:

_____        _____
Fearing, C.J.                      Siddoway, J.

14