IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| In the Matter of the Personal Restraint of | ) | No. 33998-0-III |
| | ) | |
| ALLEN ROBERT TREVINO, | ) | |
| | ) | UNPUBLISHED OPINION |
| Petitioner. | ) | |
| | ) | |

PENNELL, J. — Allen Trevino was convicted of first degree rape of a child and

communicating with a minor for immoral purposes. His conviction was upheld on appeal

to this court in an unpublished decision. *State v. Trevino*, No. 30721-2-III (Wash. Ct. App.

Jul. 1, 2014) (unpublished), http://www.courts.wa.gov/opinions/pdf/307212.unp.pdf.

Mr. Trevino now has filed a timely personal restraint petition (PRP), alleging additional

infirmities in his conviction. We reject Mr. Trevino's challenges and dismiss his PRP.

ANALYSIS[1]

A petitioner mounting a collateral challenge to a settled judgment faces a high

hurdle. Typically, relief requires showing "either that he or she was actually and

---

[1] The facts of Mr. Trevino's case were set forth in our prior opinion and need not
be repeated. The circumstances giving rise to each of Mr. Trevino's legal claims are
addressed as part of our analysis for each claim.

substantially prejudiced by constitutional error or that his or her trial suffered from a fundamental defect of a nonconstitutional nature that inherently resulted in a complete miscarriage of justice." *In re Pers. Restraint of Finstad*, 177 Wn.2d 501, 506, 301 P.3d 450 (2013). The burden falls on the petitioner to make these showings by a preponderance of the evidence. *In re Pers. Restraint of Yates*, 177 Wn.2d 1, 17, 296 P.3d 872 (2013).

*Jury instructions*

At trial, the State was permitted to introduce evidence under ER 404(b) of two uncharged incidents between Mr. Trevino and the victim. The jury was provided the following limiting instruction:

> Evidence of defendant's *uncharged offenses* has been admitted for the sole purpose of showing the defendant's alleged sexual desire for [the victim], and should not be considered by you for any other purpose. The defendant is not on trial for any act, conduct, or offense not charged in the Information.

Clerk's Papers (CP) at 176 (emphasis added).

Although defense counsel explicitly approved of this instruction at trial, Mr. Trevino now argues it was error for the limiting instruction to characterize his prior bad acts as "uncharged offenses." *Id.* He asserts that the reference to uncharged and unproven conduct as an "offense" violated his constitutional right to a fair trial.

2

Regardless of whether the wording of the court's instruction was ideal,[2] PRP relief is unwarranted. Because the term "offenses" was modified by the word "uncharged," there was no risk the jury might have mistakenly believed that Mr. Trevino had been previously convicted of an offense similar to the one on trial. In addition, because the uncharged acts were not labeled "sex offenses," there was no implication that Mr. Trevino had been labeled a sex offender. As worded, the instruction did not create a significant risk that the jury would misunderstand the relevance of the prior act evidence and convict Mr. Trevino on the basis of bad character.

*Undisclosed evidence*

Mr. Trevino asserts the State committed a *Brady*[3] violation by not turning over an Accurint residential history report to the defense. He argues the report was impeachment material, was willfully withheld by the State, and the nondisclosure of the report

---

[2] While it may have been preferable for the trial court to refer to the 404(b) evidence as "uncharged acts," the word choice was not unheard of. California's model instruction permits using the word "offense" in its prior bad act instruction. Judicial Council of Cal., Criminal Jury Instructions 375, at 144 (2016), http://www.courts.ca.gov/partners/documents/calcrim_2016_edition.pdf. The Ninth Circuit permits using the arguably more offensive word "crimes." Ninth Circuit Jury Instructions Comm., Manual of Model Criminal Jury Instructions for the District Courts of the Ninth Circuit 4.3, at 60 (2010 ed., rev. Mar. 2017), http://www3.ce9.uscourts.gov/jury-instructions/sites/default/files/WPD/Criminal_Instructions_2017_03.pdf.

[3] *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963).

3

prejudiced the outcome of trial.

Mr. Trevino's claim fails because he cannot show that the Accurint report would not have been attainable to him through due diligence. *In re Pers. Restraint of Benn*, 134 Wn.2d 868, 916-17, 952 P.2d 116 (1998). The record confirms the existence of the Accurint report was disclosed to the defense through Detective Damon Jansen's written report. At trial, the defense was aware that the victim's residential history was uncertain and had sufficient information to locate the Accurint report. Accordingly, there was no *Brady* violation.[4]

*Pre-arrest interview*

Mr. Trevino asserts it was a violation of his right against self-incrimination for Detective Jansen and the prosecutor to comment about his refusal to come to Richland for an interview. Because Mr. Trevino had not yet been arrested and never expressly invoked his right to silence, his arguments are foreclosed by *Salinas v. Texas*, __ U.S. __, 133 S. Ct. 2174, 186 L. Ed. 2d 376 (2013). *See State v. Magana*, 197 Wn. App. 189, 194-95, 389 P.3d 654 (2016).

---

[4] As explained below, in our discussion of Mr. Trevino's claim that defense counsel was ineffective for not eliciting witness testimony regarding the victim's residential history, the absence of information contained in the Accurint report was not prejudicial.

No. 33998-0-III
*In re Pers. Restraint of Trevino*

*Ineffective assistance of counsel*

Mr. Trevino argues defense counsel was ineffective for: (1) not calling an expert memory witness, (2) failing to interview potential witnesses, (3) eliciting or not objecting to impermissible testimony from the victim and the victim's grandmother, (4) admitting Mr. Trevino's guilt in closing, and (5) not objecting to Detective Jansen's testimony about the police interview. None of his claims warrant relief.

*Memory expert witness*

Mr. Trevino first argues defense counsel was ineffective for not calling an expert witness on memory issues. This argument fails, as defense counsel's conduct can be characterized as strategic. *State v. Kyllo*, 166 Wn.2d 856, 863, 215 P.3d 177 (2009). The defense theory was not that the victim had sincerely but inaccurately misremembered incidents of abuse. It was that the victim was intentionally lying and retaliating against Mr. Trevino. While Mr. Trevino has not proffered what a memory expert would have said, it appears that expert testimony would have detracted from the defense and contributed very little to the defense theory. Mr. Trevino has not shown any ineffective assistance on this basis.

*Other potential witnesses*

Mr. Trevino has compiled declarations from several individuals who could have

contradicted the victim's summary of her residential history. Mr. Trevino alleges that counsel was ineffective for failing to interview individuals and call them as witnesses at trial. Again, Mr. Trevino has not shown that defense counsel's decision was not reasonably strategic.

The impeachment value of Mr. Trevino's proffered witnesses was limited. The witnesses had no information regarding whether Mr. Trevino had assaulted the victim and the discrepancies created by their testimony would not have changed the victim's age at the time of the offense conduct.

At the same time, the testimony proffered by Mr. Trevino in his PRP could have damaged the defense case. The witnesses would have contradicted Mr. Trevino's own memory of dates and places, and thus undermined his credibility.[5] They also would have undercut defense counsel's ability to argue that the victim had pieced together her residential history in order to ensure she was living in Washington while still young enough to fall under the auspices of first degree rape of a child and first degree child

---

[5] The witnesses placed the victim and her family at various locations in the Tri-Cities through at least June 2004. Yet Mr. Trevino testified that he attended trucking school in Pasco for two weeks and received his certificate on his birthday in February 2003. He further testified that the victim and her family moved to Portland with him shortly thereafter.

molestation.[6]

It is the prerogative of defense counsel to determine whether impeachment testimony would have been helpful, or merely cumulative and distracting. This is not something we will now revisit.

*Impermissible testimony*

Mr. Trevino argues defense counsel elicited impermissible opinion testimony from the victim's mother and grandmother when he asked on cross-examination if they were "sold" by the victim's allegations. Verbatim Report of Proceedings (VRP) (Dec. 13, 2011) at 33-34, 76. He also claims defense counsel should have objected to the victim's testimony describing Mr. Trevino as a heavy drinker and using a crowbar in a bar fight.

The majority of Mr. Trevino's allegations fail because defense counsel's conduct was reasonably strategic. As to the testimony from the victim's mother and grandmother, defense counsel was trying to highlight how neither woman inquired into any particulars nor really questioned the victim's allegations. With respect to the testimony about Mr. Trevino being in a bar fight and using a crowbar, this was elicited in response to the

---

[6] Because the victim turned 12 years of age in December 2003, Mr. Trevino's proffered witnesses would have placed the victim within Washington during her entire sixth grade year and for a substantial period of time prior to her 12th birthday. Yet under Mr. Trevino's testimony, the victim would have lived in Oregon prior to the age of 12.

7

victim's explanation that she came forward with her allegations because one of her younger sisters started stating she felt uncomfortable with Mr. Trevino around. Defense counsel sought to show the jury that the younger sister was not uncomfortable with Mr. Trevino because of sexual advances or abuse, but because she saw him with a crowbar.

While it may not have been strategic for defense counsel to permit the victim's comment that Mr. Trevino "drank a lot," this small piece of testimony was not prejudicial. VRP (Dec. 13, 2011) at 54. The remark was made in the context of why the relationship between Mr. Trevino and the victim's mother was strained. It had little to do with the allegations of sexual assault. Had defense counsel objected, the trial court would have, at most, issued an instruction directing the jury to disregard the testimony. The outcome of the trial would not have been compromised.

*Admission of guilt*

Contrary to Mr. Trevino's argument, defense counsel did not admit to Mr. Trevino's guilt during closing. Defense counsel was simply addressing any possible confusion the jury might have over the court's ER 404(b) instruction. When defense counsel said "something happened in Oregon," he was not saying Mr. Trevino had committed a crime. VRP (Dec. 15, 2011) at 96. Defense counsel was merely pointing out that Mr. Trevino could not be convicted based on allegations arising in Oregon. This

8

explanation did not constitute ineffective assistance.

*Police detective's testimony*

Mr. Trevino last argues defense counsel should have objected to testimony by Detective Jansen. The detective speculated that Mr. Trevino agreed to travel no further than Umatilla, Oregon for a meeting with law enforcement because Mr. Trevino thought it would be harder to extradite him. We agree the detective's testimony as to Mr. Trevino's state of mind was objectionable. However, as explained above, the State was permitted to introduce evidence of Mr. Trevino's pre-arrest silence and the fact that Mr. Trevino appeared to be avoiding police contact. Even assuming the jurors were familiar with the concept of extradition, little was added to the State's case by the detective's speculation that Mr. Trevino was specifically motivated to avoid extradition. Mr. Trevino has not shown prejudice.

*Prosecutorial misconduct*

Mr. Trevino asserts the prosecutor committed misconduct when she: (1) argued how men like Mr. Trevino groom their victims, (2) argued that children remember things based on what grade they were in, (3) commented on the lack of defense evidence and impugned the integrity of defense counsel, (4) misstated facts in evidence, (5) vouched for the victim's credibility, and (6) misstated the burden of proof. To the limited extent

9

that any misconduct occurred, it does not warrant relief.

*Argument regarding grooming*

Mr. Trevino claims the prosecutor committed misconduct when she argued that men like Mr. Trevino groom their victims, and then further argued that is what happened in this case. In essence, Mr. Trevino's argument is that the prosecutor argued facts outside the record.[7] We agree with Mr. Trevino's characterization of the prosecutor's statements and also agree they were improper.

While a prosecutor has wide latitude in closing argument, he or she may not act as a witness or draw inferences based on expertise outside the realm of common knowledge. The behavior patterns of sexual predators is not something that falls within common knowledge. For that reason, "expert testimony is required if the State intends to rely on the grooming process to prove and argue its case." *In re Pers. Restraint of Phelps*, 197 Wn. App. 653, 676, 389 P.3d 758 (2017). Because no expert testified in Mr. Trevino's case, it was inappropriate for the prosecutor to argue that Mr. Trevino engaged

---

[7] While the prosecutor did not use the term "grooming," the substance of her statement amounted to an explanation of the grooming process. The prosecutor stated: "This is the progression of these types of crimes. This is what men like Mr. Trevino do. You start out slowly. You get them comfortable talking about sex. You get them comfortable thinking about sex. You want them to be comfortable around you sexually." VRP (Dec. 15, 2011) at 74.

in acts of grooming.

Although the prosecutor should not have referenced grooming in closing argument, reversal is unwarranted. This case is unlike *Phelps*. The concept of grooming did not pervade Mr. Trevino's case. The prosecutor only mentioned the issue once during summation. Mr. Trevino has not met his burden of establishing that the prosecutor's error substantially prejudiced his case.

*Argument on how children remember things*

Similar to his argument regarding grooming, Mr. Trevino contends the prosecutor erred by arguing that children remember things based on their grade in school. Mr. Trevino claims this type of argument can only be supported by expert testimony. Here, we disagree. The prosecutor's argument did not fall outside the realm of common experience. The claim that a child's chronology of events is anchored to his or her grade in school is something a reasonable juror can assess according to his or her common sense. Furthermore, during her testimony, the victim specifically agreed that she was the kind of person who remembered things according to where she was in school. The prosecutor's line of argument was not inappropriate.

*Comment on defense theory of the case*

During closing argument, the prosecutor used the words "silly," "ridiculous," and

"ludicrous" to describe the defense theory of the case. VRP (Dec. 15, 2011) at 83-84, 98. While these descriptors may have been colorful, they were limited to the substance of the defense case; they were not directed at Mr. Trevino or defense counsel. Accordingly, no misconduct occurred. *State v. Brown*, 132 Wn.2d 529, 566, 940 P.2d 546 (1997) ("The prosecutor's characterization of the defense theory as 'ludicrous' was reasonable in light of the evidence."); *State v. Anderson*, 153 Wn. App. 417, 430, 220 P.3d 1273 (2009) (characterization of defendant's testimony as "'made up on the fly,' 'ridiculous,' and 'utterly and completely preposterous'" not improper).

### Misstating facts in evidence

Mr. Trevino also argues the prosecutor argued facts not in evidence by stating Mr. Trevino had told the jury he read the incest story to the victim at her residence on Snow Avenue. We disagree. The jury was aware of Mr. Trevino's testimony. This was not an extrajudicial fact. The prosecutor appears to have simply misspoken when she said "he" (i.e. Mr. Trevino), read the story instead of "she" (i.e. the victim). VRP (Dec. 15, 2011) at 74. The jury would have been aware of this misstatement since they had sat through all the testimony. Nothing improper occurred.

Mr. Trevino also claims the prosecutor misrepresented facts in evidence when she argued Mr. Trevino took off running after his confrontation with the victim's mother and

12

appeared to have his belongings ready to go. This argument was based on the testimony by the victim's mother. There was no misrepresentation.

*Vouching for the victim*

Mr. Trevino claims the prosecutor vouched for the victim when she stated "there is no reason why [the victim] would not be honest," and that the evidence shows the victim "is not making [her allegation] up basically." VRP (Dec. 15, 2011) at 83-84. While it is misconduct for a prosecutor to state a personal belief on the credibility of a witness, that is not what happened here. The prosecutor merely argued that, based on the other evidence, the jury should believe the victim's testimony. There was no misconduct. *State v. Copeland*, 130 Wn.2d 244, 290, 922 P.2d 1304 (1996) ("prosecutors may argue inferences from the evidence, including inferences as to why the jury would want to believe one witness over another").

*Misstating the burden of proof*

Mr. Trevino's final argument is that the prosecutor misstated the burden of proof when she told the jury this case comes down to whether the jurors believe the victim's testimony. Mr. Trevino's complaints are unfounded. As Mr. Trevino himself acknowledges, this case was largely a credibility contest between Mr. Trevino and the victim. The prosecutor simply argued that the case came down to whether the jury found

13

the victim credible. This was proper argument. *State v. Thorgerson*, 172 Wn.2d 438, 454, 258 P.3d 43 (2011) (prosecutor may argue that the jurors should believe the victim's testimony and, if they did, they should find defendant guilty).

## CONCLUSION

We affirm the judgment and sentence of the trial court. Mr. Trevino's personal restraint petition is dismissed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Pennell, J.

WE CONCUR:

_____          _____
Lawrence-Berrey, A.C.J.                               Siddoway, J.

14