**FILED**
**DECEMBER 19, 2017**
In the Office of the Clerk of Court
WA State Court of Appeals, Division III

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 34092-9-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| JAMES MICHAEL COMBS, | ) | |
| | ) | |
| Appellant. | ) | |

PENNELL, J. — James Combs was convicted of second degree assault with a deadly weapon after he confronted a cable technician who had been disconnecting the cable services to his home. Mr. Combs appeals, claiming (1) the State presented insufficient evidence to disprove self-defense, and (2) the prosecution improperly commented on his pre-arrest silence. We disagree with Mr. Combs's contentions and affirm.

FACTS[1]

The events leading to Mr. Combs's conviction began when a Comcast[2] technician went to Mr. Combs's home to disconnect the cable. The technician was tasked with performing a "hard disconnect," that involves disconnecting the main cable line to the home. 1 Verbatim Report of Proceedings (Nov. 9, 2015) at 82. The technician was wearing his "high-visibility vest" and was in a truck marked on both sides with "Comcast" and "Prince Telecom." *Id.* at 85. Although there were several no trespassing signs posted on Mr. Combs's property, the technician testified such signs do not prohibit his access to the cable lines. The technician explained that he knocked on Mr. Combs's door, but proceeded to the cable box after no one answered. The technician testified he could hear a television on inside the home, and heard the programming switch off once he disconnected the cable.

Immediately after the cable was disconnected, Mr. Combs came out of the house, opening the door with "pretty intense" force. *Id.* at 91. Armed with a metal baseball bat, Mr. Combs took a full swing at the technician. The technician was able to dodge the swing, which he believed would have struck his head with enough force to kill or at least

---

[1] Our factual statement is based on the evidence presented at trial.

[2] The technician was employed by Prince Telecom, a subcontractor for Comcast.

seriously injure him. Mr. Combs took several more full or partial swings at the technician and, with a generous use of profanity, accused the technician of trespassing. The technician identified himself as a Comcast subcontractor multiple times. He testified Mr. Combs continued to advance with the bat while the technician retreated toward his truck. Once in the truck, the technician called 911.

A deputy with the Spokane County Sheriff's Department responded to the 911 call. The deputy spoke with the technician at the scene, took a statement, and then attempted to speak with Mr. Combs. After additional deputies arrived, they knocked on the doors to Mr. Combs's home but received no answer. The deputies conferred with their superior about whether to remove Mr. Combs from his home through the use of a special weapons and tactics (SWAT) team. They eventually decided to apply for a warrant and arrest Mr. Combs on a different day. While this decision was being made, Mr. Combs's girlfriend came out of the house to speak with the police. She indicated Mr. Combs was not going to come out, and that she was sending text messages to Mr. Combs including information that the police were considering using a SWAT team to arrest him. During his trial testimony, the deputy acknowledged that Mr. Combs had no obligation to come out and speak with the police. No SWAT team was ever called, and Mr. Combs eventually received a summons in the mail.

3

Mr. Combs offered a different version of events. He testified he was lying in bed with his girlfriend when one of the walls started shaking as if someone was pounding on it from the outside. He grabbed the baseball bat and went outside where he saw an unknown person, the technician, standing near the house. Mr. Combs testified the technician did not immediately identify himself. Mr. Combs further testified he repeatedly demanded the technician leave the property for trespassing, was very scared and angry, and did not swing the bat at the technician. He also testified the technician advanced toward him (Mr. Combs) as if to take the bat. The technician eventually indicated he was with Comcast and retreated toward his truck. Mr. Combs then went back into his home and called 911. Briefly, and not particularly relevant other than for context, Mr. Combs was rude, arrogant, and disrespectful to the 911 dispatcher, and refused to answer questions about his location or if he was armed. Mr. Combs acknowledged and apologized for this behavior at trial.

During cross-examination, the prosecutor asked Mr. Combs why he refused to come out. Mr. Combs testified it was due to shock over what happened with the technician and his conduct toward the 911 dispatcher. After several questions from the prosecutor that appeared designed to rehash some of the more belligerent portions of Mr. Combs's 911 call, the trial judge instructed the prosecutor to move on following a

4

defense objection for being argumentative. Mr. Combs also testified that he was afraid to speak with the police after he learned they were considering bringing in a SWAT team. Mr. Combs placed a second 911 call, which is also irrelevant other than for context, in which he threatened legal action against the police for considering SWAT options.

During closing argument, the prosecutor discussed the self-defense jury instructions and argued self-defense did not apply because the technician was not a malicious trespasser. Defense counsel argued the only reason Mr. Combs was charged was because he was rude to the 911 dispatcher, and he refused to come out and speak with the police. In rebuttal, the prosecutor again argued, based on the standard in the jury instructions, that self-defense did not apply. He further argued that Mr. Combs refused to come out of his house because he knew what he did to the technician was wrong and was afraid of getting in trouble.

The jury found Mr. Combs guilty of second degree assault with a deadly weapon. He appeals.

## ANALYSIS

*Sufficiency of the evidence*

Due process requires the State prove all elements of the crime beyond a reasonable doubt. *State v. Washington*, 135 Wn. App. 42, 48, 143 P.3d 606 (2006). In a sufficiency

5

challenge, the inquiry is "whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found guilt beyond a reasonable doubt." *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). "[A]ll reasonable inferences from the evidence must be drawn in favor of the State and interpreted most strongly against the defendant." *Id.*

Mr. Combs was charged with second degree assault under RCW 9A.36.021(1)(c), assaulting another with a deadly weapon. "Assault" is defined in one of three ways: "(1) an attempt, with unlawful force, to inflict bodily injury upon another; (2) an unlawful touching with criminal intent; and (3) putting another in apprehension of harm whether or not the actor actually intends to inflict or is incapable of inflicting that harm." *State v. Hupe*, 50 Wn. App. 277, 282, 748 P.2d 263 (1988). Mr. Combs focuses his argument on the first definition. Under RCW 9A.16.020(3), a person's use of force is not unlawful when used to stop a malicious trespasser and the force utilized is not more than necessary. Further, when a defendant charged with assault alleges self-defense, the State is required to disprove the claim of self-defense beyond a reasonable doubt because the claim of self-defense negates the unlawful force element of the assault charge. *State v. Acosta*, 101 Wn.2d 612, 615-19, 683 P.2d 1069 (1984).

6

Mr. Combs argues the State failed to prove the technician had lawful authority to be on his property, making him a trespasser. But a claim of self-defense is not that simple. The trespasser must be a *malicious* trespasser. RCW 9A.16.020(3) (emphasis added). Title 9A RCW defines "maliciously" as having "an evil intent, wish, or design to vex, annoy, or injure another person." RCW 9A.04.110(12). Viewing the evidence in a light most favorable to the State, the jury could have easily found beyond a reasonable doubt the technician was not a malicious trespasser.

Even excluding the technician's testimony that he could ignore Mr. Combs's no trespassing signs, the State presented sufficient evidence the technician was not a malicious trespasser. The technician arrived at the property wearing a high visibility vest in a marked Comcast and Prince Telecom truck. He knocked on the door to Mr. Combs's home and proceeded to disconnect the cable after receiving no answer. The technician testified he never threatened Mr. Combs and quickly identified himself as being with Comcast multiple times. While Mr. Combs offered a different version of the events, this competing testimony is not relevant for purposes of the present analysis. *State v. Green*, 94 Wn.2d 216, 221, 616 P.2d 628 (1980) (sufficiency analysis does not involve reweighing evidence). The State presented sufficient evidence for the jury to find the technician was not a malicious trespasser.

*Prosecutorial misconduct*

Allegations of prosecutorial misconduct are reviewed for abuse of discretion. *State v. Lindsay*, 180 Wn.2d 423, 430, 326 P.3d 125 (2014). A defendant bears the burden of showing the prosecutor's comments are both improper and prejudicial. *Id.* Here, Mr. Combs cannot show the prosecutor's argument was improper.

Mr. Combs's arguments are based on *State v. Easter*, 130 Wn.2d 228, 236, 922 P.2d 1285 (1996), and its progeny. As this court explained in *State v. Magana*, 197 Wn. App. 189, 194-95, 389 P.3d 654 (2016), *Easter* and its progeny have been overruled by *Salinas v. Texas*, 570 U.S. 178, 133 S. Ct. 2174, 2179-84, 186 L. Ed. 2d 376 (2013). The prosecutor's argument concerned Mr. Combs's pre-arrest silence, and he never expressly invoked his right to silence. The Fifth Amendment[3] right to silence does not bar the prosecutor's argument. Further, the prosecutor's arguments were used to rebut Mr. Combs's claims that he did not want to speak with the police after hearing the police were considering SWAT options and because he was rude to the 911 dispatcher. Mr. Combs's defense made his refusal to come out and speak with the police a relevant topic for the prosecutor to address. As the prosecutor's argument was not improper, there was no misconduct.

---

[3] U.S. CONST. art. V

8

No. 34092-9-III
*State v. Combs*

## CONCLUSION

The judgment and sentence is affirmed.

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to

RCW 2.06.040.

_____
Pennell, J.

WE CONCUR:

_____        _____
Fearing, C.J.                          Lawrence-Berrey, J.

9