IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| THE STATE OF WASHINGTON, | ) | No. 79454-0-I |
| | ) | |
| Respondent, | ) | DIVISION ONE |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| ADAM SHANE SMITH, | ) | |
| | ) | |
| Appellant. | ) | |
| | ) | |

HAZELRIGG, J. — Adam Smith contends that multiple conditions of community custody should be stricken or revised because they are unconstitutional or otherwise unlawful. We agree that that the conditions restricting his access to computers, the internet, and online communications infringe on his First Amendment rights as written and remand for clarification of these conditions. We accept the State's concession that the requirement that Smith "complete identified interventions" is unconstitutionally vague and should be stricken on remand. The record also demonstrates that the community custody supervision fee was imposed inadvertently and should be stricken. We otherwise affirm.

FACTS

Adam Smith pleaded guilty to two counts of possession of depictions of a minor engaged in sexually explicit conduct in the second degree. The trial court sentenced Smith to 17 months incarceration plus 36 months of community

custody. A community corrections officer (CCO) prepared and submitted a presentence investigation report on behalf of the Department of Corrections (DOC) that included 23 recommended conditions of community custody. At sentencing, the State noted that the proposed language of community custody condition number 5, "do not frequent areas where minor children are known to congregate," was likely insufficient and recommended that the court include a nonexclusive list of such areas. Smith asked the court not to impose conditions related to staying away from minor children, noting that he did not "have any history of being a predator towards children" and the crimes of conviction were "purely sort of an internet created issue." He also objected to the conditions prohibiting computer access. Smith asked the court to find that he was indigent and "to waive everything except for the $500 victim compensation assessment and the $100 DNA fee."

The court imposed community custody conditions, including limitations on Smith's computer and internet access, prohibitions from entering certain areas, and requirements to complete programs:

> 5. Stay out of areas where children's activities regularly occur or are occurring. This includes, but is not limited to: parks used for youth activities, schools for children under 18, daycare facilities, playgrounds, wading pools and swimming pools being used for youth activities, children's play areas (indoor [and] outdoor), sports fields being used for youth sports activities, arcades, youth church services, restaurants serving or catering primarily to children, and any specific locations identified in advance by the CCO.
> . . . .
> 11. Do not possess a device through which the Internet may be accessed for browsing purposes unless such access is approved in advance by the supervising Community Corrections Officer and your treatment provider. Any computer to which you have access is subject to search. Such devices shall include, but [are] not limited to smart phones, tablets, desktop computers [and] gaming devices through which the Internet can be accessed for browsing purposes.

12. Do not use access [sic] online communities where multiple people communicate simultaneously without approval in advance of CCO.

. . . .

15. You may not possess or maintain access to a computer unless specifically authorized by your supervising Community Corrections Officer. You may not possess any computer parts or peripherals, including but not limited to hard drives, storage devices, digital cameras, web cams, wireless video devices or receivers, CD/DVD burners, or any device to store or reproduce digital media or images.

. . . .

22. Based on eligibility, enter and successfully complete identified interventions to assist you to improve your skills, relationships, and ability to stay crime free.

The court found Smith indigent and imposed a $500 victim penalty assessment and $100 DNA fee. In its oral ruling, the court did not specifically order Smith to pay supervision fees. However, it did not strike the pre-printed language on the standard judgment and sentence form describing conditions applicable to all community custody terms stating that Smith "shall . . . pay supervision fees as determined by DOC." The supervision fee was not expressly referenced by any party at sentencing. Smith appealed.

ANALYSIS

I. Constitutional Challenges to Community Custody Conditions

Smith challenges five of the conditions of community custody on constitutional grounds, arguing that they are impermissibly vague or overbroad.

As part of a term of community custody, the court may, in its discretion, order an offender to comply with any crime-related prohibitions. RCW 9.94A.703(3)(f). Because the imposition of these conditions falls within the trial court's discretion, we review community custody conditions for abuse of discretion

and will reverse only if they are manifestly unreasonable. State v. Padilla, 190 Wn.2d 672, 677, 416 P.3d 712 (2018). Unconstitutional conditions are necessarily unreasonable and an abuse of discretion. Id.

### A. Restrictions on Computer and Internet Access

Smith first contends that the conditions restricting his access to computers, the internet, and online communications are overbroad and infringe on his First Amendment rights.

The First Amendment prevents the government from prohibiting speech or expressive conduct. U.S. CONST. amend. I; State v. Halstien, 122 Wn.2d 109, 121, 857 P.2d 270 (1993). It generally bars the government from dictating what we see, read, speak, or hear, although it "does not embrace certain categories of speech, including defamation, incitement, obscenity, and pornography produced with real children." Ashcroft v. Free Speech Coalition, 535 U.S. 234, 245–46, 122 S. Ct. 1389, 152 L. Ed. 2d 403 (2002). "A fundamental principle of the First Amendment is that all persons have access to places where they can speak and listen, and then, after reflection, speak and listen once more." Packingham v. North Carolina, __ U.S. __, 137 S. Ct. 1730, 1735, 198 L. Ed. 2d 273 (2017). In the modern era, some of the most important places for the exchange of views can be found in "the 'vast democratic forums of the Internet,'" particularly social media. Id. (quoting Reno v. American Civil Liberties Union, 521 U.S. 844, 868, 117 S. Ct. 2329, 138 L. Ed. 2d 874 (1997)).

A convicted offender may be subject to infringement on their constitutional rights during a term of community custody if authorized by the Sentencing Reform

Act of 1981 (SRA).[1] State v. Ross, 129 Wn.2d 279, 287, 916 P.2d 405 (1996). Community custody conditions may restrict an offender's First Amendment rights if the conditions are sensitively imposed and "reasonably necessary to accomplish the essential needs of the state and public order." State v. Bahl, 164 Wn.2d 739, 757, 193 P.3d 678 (2008).

The United States Supreme Court considered the constitutionality of a statute restricting internet usage in Packingham v. North Carolina, 137 S. Ct. 1730. The challenged statute made it a felony for a registered sex offender "'to access a commercial social networking Web site where the sex offender knows that the site permits minor children to become members or to create or maintain personal Web pages.'" Id. at 1733 (quoting N.C. Gen. Stat. Ann. §§ 14–202.5(a), (e) (2015)). The Court found that the statute unconstitutionally restricted lawful speech in violation of the First Amendment:

> By prohibiting sex offenders from using [social media] websites, North Carolina with one broad stroke bars access to what for many are the principal sources for knowing current events, checking ads for employment, speaking and listening in the modern public square, and otherwise exploring the vast realms of human thought and knowledge. These websites can provide perhaps the most powerful mechanisms available to a private citizen to make his or her voice heard. They allow a person with an Internet connection to "become a town crier with a voice that resonates farther than it could from any soapbox."
> In sum, to foreclose access to social media altogether is to prevent the user from engaging in the legitimate exercise of First Amendment rights.

Id. at 1737 (internal citations omitted) (quoting Reno, 521 U.S. at 870).

---

[1] Chap. 9.94A RCW.

This court has considered the application of Packingham to a variety of conditions imposed on offenders that restricted internet access and/or computer usage, the most factually similar of which is State v. Hammerquist, No. 75949-3-I, (Wash. Ct. App. Apr. 30, 2018) (unpublished), http://www.courts.wa.gov/opinions/pdf/759493.PDF. In that case, we considered a First Amendment challenge to a condition of community custody identical to condition 15 here. Id. at 6. Although we noted that the restriction on devices with image-storing capability was related to the crime of conviction, we found that "that concern does not support an absolute bar on any use of any computer for legitimate activity, as recognized in Packingham." Id. at 9 (emphasis omitted). A prohibition on computer use absent CCO approval without stating any standard to be applied by the CCO "may prevent Hammerquist from enjoying his right to 'gain access to information and communicate' with others about 'any subject that might come to mind.'" Id. at 9 (emphasis omitted) (quoting Packingham, 137 S. Ct. at 1737).

Recently, Division Two of this court upheld a community custody condition restricting internet access in State v. Johnson. 12 Wn. App. 2d 201, 460 P.3d 1091 (2020). Johnson challenged the constitutionality of an order that he "not use or access the World Wide Web unless specifically authorized by CCO through approved filters." Id. at 213. Division Two drew a distinction between the challenged community custody condition and the statute in Packingham. Id. at 215. It found that the condition was sufficiently tailored to Johnson's crimes because the internet was "the medium through which he committed his crimes" and

restricting his internet use was reasonably necessary to prevent him from reoffending. Id. The court also explained that the condition was sensitively imposed because it was not an absolute ban on internet-based activities; Johnson was still able to use the internet with authorization and use of approved filters. Id.

Here, Smith's crime was related to computer and internet usage, and, as in Johnson, some restriction on computer and internet use was reasonably necessary to prevent repeat offenses. However, as in Hammerquist, the absolute bar on "possess[ing] or maintain[ing] access to a computer" prevents even legitimate exercise of Smith's First Amendment rights. Unlike Johnson, where the scope of permitted internet activities could be guided by the constraints of the filtering software, the conditions challenged here supply no guidance to the CCO as to the type of computer usage that should be approved.

Smith contends that remand for clarification of these challenged conditions is unnecessary because they overlap significantly with other unchallenged conditions, which are sufficient to protect the community and restrain him from problematic behaviors. He argues that the conditions should therefore be stricken. We disagree that every concern that the trial court had when it imposed these prohibitions is necessarily addressed by the remaining community custody conditions. Rather, the remedy described in Hammerquist is also appropriate here:

> In view of the potential impact on recognized free speech rights, the scope and meaning of any limitation on the use of computers must be clarified on remand. Specifically, the sentencing court should clarify (i) the distinction between merely using a computer and possessing or maintaining access to a computer; (ii) what standards apply to the CCO in determining what access to

computers is allowed; and (iii) given the ubiquitous presence of computers in our society, if, and why, [the conditions] impact[] any use or possession of items that include computers with no capacity to store or download images.

Hammerquist, slip op. at 9–10. We remand for clarification of these conditions.


B.      Exclusion from "Schools for Children Under 18"

Smith next argues that the portion of condition 5 preventing him from approaching "schools for children under 18" is legally inaccurate and overbroad. He contends that this condition should be remanded for revision to ban access to "schools for children under 16."

In support of his argument, Smith cites a case from Division Three of this court in which the court remarked that "[i]n the context of a sex offense, the term 'children' refers to individuals under the age of 16." State v. Johnson, 4 Wn. App. 2d 352, 361, 421 P.3d 969 (2018). Johnson was convicted of second degree child molestation, and one of the conditions of community custody restricted his access to "places where children congregate." Id. at 356. When Johnson challenged this condition as unconstitutionally vague, the court turned to the statutes criminalizing child molestation and rape of a child to define the word "children," which was not defined in the condition. Id. at 360–61. Because the court determined that the definition of "children" in this context "may not be readily apparent to someone outside the criminal justice system," it directed the trial court to substitute "children under 16" for "children" in the community custody condition on remand. Id. at 361 n.3.

Here, the court supplied a definition of the word "children" when it banned Smith from approaching "schools for children under 18." Unlike Johnson, Smith was convicted of possession of depictions of a minor engaged in sexually explicit conduct in the second degree. A "minor" is any person under 18 years old. RCW 9.68A.011(5). Because the court supplied a definition of "children" in the condition as individuals under 18 and this definition is consistent with the crime of conviction, Johnson does not require revision of this language. Smith has not shown that the trial court abused its discretion in imposing this condition.

C.      Exclusion from Additional Specified Locations

Smith next contends that the condition requiring him to stay away from specific locations identified in advance by the CCO is unconstitutionally vague because it affords the CCO too much discretion.

The due process clauses of the Fourteenth Amendment to the United States Constitution and article I, section 3 of the Washington Constitution require that citizens have fair warning of prohibited conduct. Bahl, 164 Wn.2d at 752. A condition of community custody is unconstitutionally vague if "(1) it does not sufficiently define the proscribed conduct so an ordinary person can understand the prohibition or (2) it does not provide sufficiently ascertainable standards to protect against arbitrary enforcement." Padilla, 190 Wn.2d at 677. It is not unconstitutionally vague "merely because a person cannot predict with complete certainty the exact point at which his actions would be classified as prohibited conduct." Id. (quoting State v. Sanchez Valencia, 169 Wn.2d 782, 793, 239 P.3d 1059 (2010)).

Washington courts have recently considered a string of challenges to similar community custody provisions. In State v. Irwin, this court found that the condition that the offender "not frequent areas where minor children are known to congregate, as defined by the supervising CCO" was unconstitutionally vague. 191 Wn. App. 644, 652, 655, 364 P.3d 830 (2015). We determined that, "[w]ithout some clarifying language or an illustrative list of prohibited locations . . . , the condition does not give ordinary people sufficient notice to 'understand what conduct is proscribed.'" Id. (quoting Bahl, 164 Wn.2d at 753). Even if the CCO were to specify locations where children were known to congregate, we noted that the condition would be vulnerable to arbitrary enforcement in violation of the second prong of the vagueness analysis. Id.

After Irwin, Division Three of this court considered the constitutionality of a similar but slightly more specific community custody condition: "Do not frequent parks, schools, malls, family missions or establishments where children are known to congregate or other areas as defined by supervising CCO [community corrections officer], treatment providers." State v. Magana, 197 Wn. App. 189, 200, 389 P.3d 654 (2016) (alteration in original), abrogated on other grounds by Padilla, 190 Wn.2d at 719. Even with the addition of the illustrative list, the court found that, under Irwin, the CCO's "boundless" discretion to designate prohibited spaces was unconstitutionally vague because it remained susceptible to arbitrary enforcement. Id. at 201.

Most recently, the Supreme Court considered a vagueness challenge to the condition that "[t]he defendant shall not loiter in nor frequent places where children

- 10 -

congregate such as parks, video arcades, campgrounds, and shopping malls." State v. Wallmuller, 194 Wn.2d 234, 237, 449 P.3d 619 (2019). The court found that the phrase "where children congregate" was sufficiently specific to survive a vagueness challenge "when modified by a nonexclusive list of places illustrating its scope." Id. at 243. It determined that an ordinary person could understand the scope of the prohibited conduct "reading this condition in a commonsense way and in the context of the other conditions." Id. at 245.

Smith concedes that the nonexclusive, illustrative list of places that he is prohibited from frequenting satisfies the first prong of the vagueness test under Wallmuller. However, he maintains that the condition fails under the second prong of the vagueness analysis because it "delegates too much authority to Smith's CCO, leaving Smith vulnerable to arbitrary enforcement" as cautioned in Irwin and Magana.

The State cites two unpublished cases in support of its argument that the condition is not susceptible to arbitrary enforcement. In both cases, we considered vagueness challenges to conditions of community custody phrased similarly to the one at issue here—directives to "[s]tay out of areas where children's activities regularly occur or are occurring" followed by a nonexclusive list of places "and any specific location identified in advance" by the CCO. State v. Martinez, No. 77776-9-I, slip op. at 13 (Wash. Ct. App. July 1, 2019) (unpublished), http://www.courts.wa.gov/opinions/pdf/777769.pdf; State v. Castaneda-Cruz, No. 78813-2-I, slip op. at 11–12 (Wash. Ct. App. Dec. 30, 2019) (unpublished), http://www.courts.wa.gov/opinions/pdf/788132.pdf. We found that these

conditions were not vulnerable to arbitrary enforcement because, unlike Irwin and Magana, they did not vest the CCO with the sole authority to define places where children congregate. Martinez, slip op. at 15–16; Castaneda-Cruz, slip op. at 12.

The same is true in this case. Unlike Irwin and Magana, this condition does not delegate the definition of a key term to the CCO with little to no guidance from the court. Although the CCO may identify specific prohibited locations in addition to those listed, the extensive illustrative list provides significant guidance as to the types of places that should be prohibited. When read in a commonsense way and in context, as Wallmuller directs, the condition is not vulnerable to arbitrary enforcement and therefore is not unconstitutionally vague.

### D.     Requirement to "Complete Identified Interventions"

Smith also challenges the requirement that he "complete identified interventions" as unconstitutionally vague because it fails to give notice of what conduct is required. The State concedes that the condition is unconstitutionally vague as written because "there is no clarification from the court in the record [of] what it could possibly mean by 'interventions' or who should 'identify' them." We accept the State's concession.[2] Condition 22 should be stricken on remand.

---

[2] It is noteworthy that three prior unpublished opinions of this court have reviewed challenges to this same condition, and in each of those cases the State conceded that this condition was unconstitutionally vague. See State v. Bill, No. 73653-1-I, slip op. at 2 (Wash. Ct. App. Oct. 3, 2016) (unpublished), http://www.courts.wa.gov/opinions/pdf/736531.pdf; State v. Snyder, No. 75717-2-I, slip op. at 12–13 (Wash. Ct. App. Feb. 26, 2018) (unpublished), http://www.courts.wa.gov/opinions/pdf/757172.pdf; State v. Crawford, No. 77423-9-I, slip op. at 6–7 (Wash. Ct. App. Apr. 29, 2019) (unpublished), http://www.courts.wa.gov/opinions/pdf/774239.pdf.

II.     Imposition of Supervision Fees after a Finding of Indigency

Smith also contends that the trial court erred in failing to waive the condition of community custody requiring him to pay supervision fees after finding him indigent.

"Unless waived by the court, as part of any term of community custody, the court shall order an offender to: . . . [p]ay supervision fees as determined by the department." RCW 9.94A.703(2)(d).  Because these supervision fees are waivable by the trial court, they are discretionary legal financial obligations (LFOs). State v. Lundstrom, 6 Wn. App. 2d 388, 396 n.3, 429 P.3d 1116 (2018).

The trial court found Smith indigent and imposed only the mandatory victim assessment fee and DNA fee.  The supervision fee was not brought to the court's attention by any party.  Because this record demonstrates that the court intended to impose only the mandatory fees, the requirement that Smith pay community custody supervision fees should be stricken.

Affirmed in part, reversed in part.  Remanded for clarification of conditions of community custody 11, 12, and 15 and to strike condition 22 and the community custody supervision fees.

WE CONCUR:

- 13 -