# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
## DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No.    35567-5-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | ORDER WITHDRAWING |
| | ) | OPINION |
| JEREMY JOSEPH ALVAREZ, | ) | |
| | ) | |
| Appellant. | ) | |

THE COURT on its own motion finds that the opinion filed September 17, 2019, should

be withdrawn.

THEREFORE, IT IS ORDERED, the opinion filed September 17, 2019, is hereby

withdrawn and a new opinion shall be filed hereafter.

FOR THE COURT:

_Lawrence-Berrey, C.J._
Lawrence-Berrey, C.J.
Chief Judge

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 35567-5-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| JEREMY JOSEPH ALVAREZ, | ) | |
| | ) | |
| Appellant. | ) | |

LAWRENCE-BERREY, C.J. — A jury found Jeremy Alvarez guilty of one count of

second degree rape of a child and acquitted him of another. He appeals and asserts three

arguments for reversal of his conviction. In a statement of additional grounds for review,

he asserts over 20 grounds for reversal. We reject his arguments.

Alvarez also requests that we order the trial court to strike several community

custody conditions and to strike the $200 criminal filing fee. We partly agree and direct

the trial court to strike some of the contested community custody conditions and the

criminal filing fee.

FACTS

Alvarez, unable to find a place to live, moved in with his father (Mr. Alvarez), his father's fiancé (Ms. Porter), and her daughter (J.P.). Alvarez was 26, and J.P. was 13.

Several days after he moved in, Alvarez came to J.P.'s room around midnight and asked if she wanted to watch a movie. J.P. agreed because she was not sleeping well. They sat on the couch in the living room. Alvarez asked to sit closer to J.P., but she refused. Alvarez scooted over anyway. J.P. later claimed that Alvarez touched her breast and vaginal areas.

After a while, J.P. went upstairs to her bedroom. Fifteen minutes later, Alvarez came upstairs and entered her bedroom. Alvarez began rubbing lotion on J.P.'s feet and then her legs. Alvarez kept moving further up J.P.'s legs until he touched her vagina. Alvarez then inserted his fingers and used his tongue on J.P.'s vagina. Eventually, J.P. asked him to stop and leave, which he did. The entire event lasted about an hour and one-half. J.P. went to school the next day and reported the incident to her counselor, Lisa Ulrich.

Officer Jory Parish, a resource officer at Hanford High School, received a call from Lisa Ulrich. While interviewing J.P., Officer Parish learned the incident occurred in Pasco, so she contacted Pasco police.

City of Pasco Police Officer Michael Nelson responded. After speaking with Officer Parish, Officer Nelson spoke with J.P. J.P. generally reported that she had engaged in a sexual act with an individual named Jeremy. After that, Officer Nelson drove to Ms. Porter's employment to inform her what J.P. reported. While there, Officer Nelson also spoke with Mr. Alvarez on the telephone, who was out of town. Mr. Alvarez asked Officer Nelson to make sure that his son was out of the home when he returned later that day. Officer Nelson drove to the home, told Alvarez about J.P.'s accusation, and told Alvarez that his father had directed him to leave the home. Alvarez left.

Later that evening, J.P. and Ms. Porter returned home. Ms. Porter collected the pants, underwear, and bra J.P. wore the night before. The underwear was in the laundry basket. One item in the basket, a towel, had been previously used by Alvarez. Detective Jesus Romero collected J.P.'s clothing from Ms. Porter. Later, Mari Murstig, a child forensic interviewer, met with and interviewed J.P.

The State charged Alvarez with one count of rape of a child in the second degree. After unsuccessful plea negotiations, the State added a second charge of rape of a child in the second degree.

At trial, the State's first witness was Officer Nelson. He testified that when he met with Alvarez at the house, Alvarez appeared to have just awakened. The State asked

Officer Nelson whether he told Alvarez about J.P.'s allegation, and how Alvarez reacted. Alvarez objected, and requested a sidebar. Alvarez argued that the question called for improper testimony because the testimony would comment on Alvarez's right to remain silent. The State clarified that it was only eliciting testimony about Alvarez's facial expression, not about his silence or his right to remain silent. The trial court agreed, and allowed the testimony. Officer Nelson testified that when he told Alvarez of J.P.'s allegation, Alvarez "had no expression whatsoever on his face . . . . No shock or anything like that." 2 Report of Proceedings (RP) at 345.[1]

The State next called Ms. Murstig. She testified that she reviewed Officer Nelson's report before she interviewed J.P. When the State asked Ms. Murstig whether J.P.'s disclosures to her were consistent with Officer Nelson's report, Alvarez objected on the basis of hearsay, that it called for improper opinion testimony, and that it would not be helpful to the trier of fact. He did not argue that the opinion would violate his right to a jury trial. The trial court overruled Alvarez's objections and allowed the testimony. Ms. Murstig testified that J.P.'s disclosures in the interview with her were consistent with J.P.'s disclosures to Officer Nelson.

---

[1] During closing arguments, the State did not repeat this testimony nor did it refer to this testimony in any way.

The State also called J.P. She testified about the downstairs and the upstairs

incidents. Her testimony about the downstairs incident was inconsistent. She originally

testified that Alvarez touched her breasts and her vagina *over* her clothing as they

watched a movie. The State later showed her a videotape of a prior interview she had

given. After this, J.P. testified that during the movie, Alvarez had touched her

*underneath* her clothes and had inserted a finger inside her vagina.

Kaylene Folks, a forensic scientist with the Washington State Patrol Crime

Laboratory, tested J.P.'s underwear recovered from the laundry basket. She testified that

the inside crotch area tested positive both for human saliva and human male DNA.[2] She

explained that the saliva found on the inside crotch of the underwear was deposited wet.

This made it highly improbable that the saliva could have been transferred from Alvarez's

discarded towel in the laundry basket.

She also testified that the body fluid found on the inside crotch of J.P.'s underwear

could only have been saliva. She explained she used the Phadebas test, which shows a

positive result only if the substance tested has a high concentration of the enzyme

amylase. Saliva has an amylase concentration about 1,000 times higher than other bodily

---

[2] Deoxyribonucleic acid.

No. 35567-5-III
*State v. Alvarez*

fluids. And although body fluids other than saliva contain amylase, "they are in . . .

concentrations much lower than those having saliva [and] wouldn't be detected by this

Phadebas test." 3 RP at 524.

The jury found Alvarez not guilty of the downstairs charge, but guilty of the

upstairs charge. At sentencing, the trial court imposed a sentence of 110 months and

entered multiple community custody conditions.

Alvarez timely appealed.

ANALYSIS

A.    TESTIMONY ABOUT ALVAREZ'S REACTION

Alvarez contends the State improperly elicited testimony on his prearrest silence,

violating his constitutional right.

The State first argues that demeanor—lack of surprise or shock—is not silence.

The State fails to cite authority to support its argument. Demeanor is not always silence.

Anger or embarrassment do not denote silence. But a lack of emotion is sufficiently

similar to silence that any difference is without a distinction. We reject the State's first

argument.

The State next argues that the United States Supreme Court has recently clarified

that the right to remain silent does not arise, prearrest, until one invokes it. And because

6

state and federal constitutional provisions against self-incrimination are coextensive, to the extent prior Washington decisions are inconsistent, those decisions no longer are good law.

In response to this, Alvarez urges this court to perform a *Gunwall*[3] analysis; that is, to analyze the issue under independent Washington State constitutional principles. We decline to do so. Prior authority from our high court constrains our conclusion that the state and federal constitutional provisions on this issue are coextensive.

When a claim is asserted under both the Washington Constitution and the United States Constitution, the first inquiry is whether the asserted right is more broadly protected under the state constitution rather than its federal counterpart. *State v. Earls*, 116 Wn.2d 364, 374, 805 P.2d 211 (1991). Washington courts have long held that the protections of article I, section 9, are "coextensive with, not broader than, the protection of the Fifth Amendment [to the United States Constitution]." *Id.* at 374-75 (citing *State v. Moore*, 79 Wn.2d 51, 57, 483 P.2d 630 (1971). Because the Washington Constitution does not provide broader protections, a *Gunwall* analysis is unnecessary, and we begin our analysis with federal law. *Id.*

---

[3] *State v. Gunwall*, 106 Wn.2d 54, 720 P.2d 808 (1986).

The Fifth Amendment to the United States Constitution, made applicable to the States through the Fourteenth Amendment, generally prohibits the State from commenting about the defendant's failure to speak. *State v. Easter*, 130 Wn.2d 228, 238-39, 922 P.2d 1285 (1996). However, the United States Supreme Court has recently addressed the difference between prearrest and postarrest silence in *Salinas v. Texas*, 570 U.S. 178, 133 S. Ct. 2174, 186 L. Ed. 2d 376 (2013).

In *Salinas*, the defendant agreed to speak with officers about a murder investigation, but when the officers questioned the defendant on whether the shell casings from the crime scene would match the defendant's firearm, the defendant "'[l]ooked down at the floor, shuffled his feet, bit his bottom lip, cl[e]nched his hands in his lap, [and] began to tighten up.'" *Id.* at 182. Eventually, more evidence led to the defendant's arrest. *Id.* At trial, the defendant did not testify. *Id.* However, the State used the defendant's reaction to the officer's interview question about the shell casings as evidence of the defendant's guilt. *Id.*

In a plurality decision, the Court found that, unless a defendant expressly invokes the privilege, the State can use a defendant's prearrest silence as evidence of guilt and it would not violate the Fifth Amendment. *Id.* at 186; *see also State v. Terry*, 181 Wn. App. 880, 888, 328 P.3d 932 (2014); *State v. Magana*, 197 Wn. App. 189, 195, 389 P.3d 654

(2016), *abrogated on other grounds by State v. Johnson*, 4 Wn. App. 2d 352, 421 P.3d

969, *review denied*, 192 Wn.2d 1003, 340 P.3d 260 (2018).  Therefore, because the

defendant did not invoke the privilege and there was no evidence that the defendant was

deprived of the ability to voluntarily invoke the privilege under the circumstances, "the

prosecution's use of his noncustodial silence did not violate the Fifth Amendment."

*Salinas*, 570 U.S. at 186.  A two-justice concurrence would have concluded that the Fifth

Amendment right to remain silent does not arise prior to an arrest.  *Id.* at 191-93 (Thomas,

J., Scalia, J. concurring).

Here, we are concerned with prearrest silence.  The testimony was short: after

Officer Nelson informed Alvarez of J.P.'s allegations, Alvarez had no shock or other

expression on his face.  Alvarez was not under arrest, he was not prevented from invoking

his right to remain silent, and he did not invoke this right.  Under *Salinas*, five justices

would conclude that the State was entitled to present testimony about Alvarez's prearrest

silence.  *See Magana*, 197 Wn. App. at 195 (following the *Salinas* plurality).

Alvarez argues that *Salinas* was a plurality decision and is, thus, not controlling

precedent.  We have difficulty with this argument, given that the result we reach here is

consistent with how five United States Supreme Court justices would rule.

9

Were we to conclude that such testimony was improper, this author, but not a majority, would conclude that the error was harmless beyond a reasonable doubt. As noted previously, the substance found on the inside crotch of J.P.'s underwear was definitely saliva, and because the saliva was deposited wet on the underwear, it was highly improbable that it could have been transferred from Alvarez's discarded towel. The only plausible explanation is that Alvarez performed oral sex on J.P.[4] Had the trial court excluded Officer Nelson's comment that Alvarez showed no reaction to J.P.'s accusation, scientific evidence of Alvarez's guilt was insurmountable.

B.     EXPERT TESTIMONY ABOUT THE VICTIM'S CONSISTENT STATEMENTS

Alvarez contends the trial court erred by overruling his objection to Ms. Murstig's opinion that J.P.'s statements to her were consistent with J.P.'s earlier statements to an officer. He argues this error is both evidentiary and constitutional.

---

[4] Both concurring judges believe a jury could reasonably find that the saliva was deposited on the inside crotch of J.P.'s underwear by someone spitting, perhaps accidentally while talking. This author disagrees. First, Alvarez argued this, and the jury rejected his argument. Second, a trained officer or technician would not have spit on the underwear. Even while testifying, the technician was careful enough not to hold the underwear near her mouth while she spoke. Third, the location of the saliva—inside crotch—strongly corroborates J.P.'s testimony and strongly contradicts accidental spitting. Finally, if Alvarez believed that someone *intentionally* spit on J.P.'s underwear, he would have so argued. He did not.

*1.      Evidentiary error*

Alvarez argues that Ms. Murstig's opinion was inadmissible under ER 702 because it was not helpful to the trier of fact and because a lay person could determine whether two statements are consistent.  We agree, but conclude that the error was harmless.

A trial court's decision to admit expert testimony is reviewed for an abuse of discretion.  *State v. Kirkman*, 159 Wn.2d 918, 927, 155 P.3d 125 (2007).  "An abuse of discretion occurs only when the decision of the court is 'manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons.'"  *State v. McCormick*, 166 Wn.2d 689, 706, 213 P.3d 32 (2009) (quoting *State ex rel. Carroll v. Junker*, 79 Wn.2d 12, 26, 482 P.2d 775 (1971)).

Generally, testimony about the veracity of witnesses is inappropriate opinion testimony.  *See State v. Quaale*, 182 Wn.2d 191, 200, 340 P.3d 213 (2014).  A lay opinion is admissible if it is rationally based on the witness's perception, helpful to the determination of a fact in issue, and not based on specialized knowledge.  ER 701.  Ms. Murstig's opinion that J.P.'s statements to Officer Nelson were consistent with J.P.'s statements to her was an opinion not based on Ms. Murstig's specialized knowledge.  It, therefore, was an improper expert opinion.

But the improper admission of her opinion was harmless error. The jury did not believe Ms. Murstig that J.P.'s stories were consistent. It acquitted Alvarez on the downstairs charge, the charge that depended on J.P.'s credibility. The jury found Alvarez guilty only on the charge that did not depend on J.P.'s credibility, the upstairs charge. That charge was supported by forensic evidence, evidence that Alvarez could not credibly dispute.

### 2.    *Constitutional error not reviewable*

Alvarez argues that Ms. Murstig's opinion was inadmissible under the Washington Constitution article I, sections 21 and 22, and the United States Constitution amendment VI because it violated his constitutional right to a jury trial. But Alvarez did not raise this issue at the trial court.

The general rule is that appellate courts will not consider an issue raised for the first time on review. *Kirkman*, 159 Wn.2d at 926. However, a claim of error may be raised for the first time on appeal if it is a manifest error affecting a constitutional right. RAP 2.5(a)(3); *In re Dependency of M.S.R.*, 174 Wn.2d 1, 11, 271 P.3d 234 (2012). To meet RAP 2.5(a)(3)'s requirements, an appellant must demonstrate (1) the error is truly of constitutional magnitude, and (2) the error is manifest. *Kirkman*, 159 Wn.2d at 926.

In analyzing the asserted constitutional interest, we do not assume the alleged error is of constitutional magnitude. *State v. Scott*, 110 Wn.2d 682, 687, 757 P.2d 492 (1988). The claim must be one of truly constitutional magnitude. We look to the asserted claim and assess whether, if correct, it implicates a constitutional interest as compared to another form of trial error. *Id.* at 689-91.

After determining the error is of constitutional magnitude, we determine whether the error was manifest. To determine whether manifest error was committed, there must be a plausible showing by the appellant that the asserted error had practical and identifiable consequences in the trial of the case. *State v. O'Hara*, 167 Wn.2d 91, 99, 217 P.3d 756 (2009).

RAP 2.5(a)(3) serves as a "gatekeeping function." *State v. Lamar*, 180 Wn.2d 576, 583, 327 P.3d 46 (2014). The "gatekeeping function" of the rule is different from the analysis of reviewing the claimed error. *Id.* "The requirements under RAP 2.5(a)(3) should not be confused with the requirements for establishing an actual violation of a constitutional right or for establishing lack of prejudice under a harmless error analysis if a violation of a constitutional right has occurred." *Id.*

With these standards in mind we first determine whether Alvarez's claim is truly of constitutional magnitude. Generally, no witness in a criminal trial may offer testimony

in the form of an opinion regarding the veracity of the defendant. *Kirkman*, 159 Wn.2d at 927. Similarly, no witness in a criminal trial may offer an opinion on the veracity of a witness. *Quaale*, 182 Wn.2d at 200. Such opinions violate the defendant's constitutional right to a jury trial, which includes the independent determination of the facts by the jury. *Kirkman*, 159 Wn.2d at 927. Here, Alvarez claims the trial court erred in allowing Ms. Murstig to offer an opinion on the veracity of J.P., who testified at trial. We conclude that Alvarez's claim is truly of constitutional magnitude.

But not all opinions touching on a witness's veracity qualify as manifest error. "'Manifest error' requires a nearly explicit statement by the witness that the witness believed the accusing victim." *Kirkman*, 159 Wn.2d at 936. This heightened standard is consistent with precedent holding that the manifest error exception is narrow. *Id.*

Here, Ms. Murstig did not testify that she believed J.P. Instead, she testified that J.P.'s statements to her were consistent with J.P.'s statements to an officer. This is insufficient to constitute manifest error.

C.    JUDICIAL COMMENTS ON THE EVIDENCE

Alvarez contends the trial court commented on the evidence three separate times. Alvarez did not object to any of the court's purported comments; however, a judicial comment on the evidence is an error of constitutional magnitude that can be raised for the

14

first time on appeal. *State v. Sivins*, 138 Wn. App. 52, 59, 155 P.3d 982 (2007);

RAP 2.5(a)(3).

Article IV, section 16 of the Washington Constitution states that "[j]udges shall not charge juries with respect to matters of fact, nor comment thereon, but shall declare the law." In other words, judges are prohibited from commenting on the evidence. WASH. CONST. art. IV, § 16; *State v. Levy*, 156 Wn.2d 709, 721, 132 P.3d 1076 (2006). "[A]ny remark that has the potential effect of suggesting that the jury need not consider an element of an offense could qualify as judicial comment." *Levy*, 156 Wn.2d at 721. "It is sufficient if a judge's personal feelings about a case are merely implied." *Sivins*, 138 Wn. App. at 58. This important constitutional principle serves to protect the jury from being unduly influenced by the court's opinion on the evidence or credibility. *Id.*

Washington courts use a two-step analysis to determine whether reversal is required due to a judicial comment on the evidence. *Levy*, 156 Wn.2d at 723. To ascertain whether a court's conduct or remarks rise to a comment on the evidence, courts examine the facts and circumstances of the case. *Sivins*, 138 Wn. App. at 58. If there was a judicial comment, it is "presumed to be prejudicial, and the burden is on the State to show that the defendant was not prejudiced, unless the record affirmatively shows that no prejudice could have resulted." *Levy*, 156 Wn.2d at 723.

*Court told a juror during voir dire the victim was 12 or 13*

Alvarez's first contention is that the court told a person, who ultimately became 1 of the 12 jurors, that it believed the victim was 12 or 13 years old. During jury selection, the juror advised the court her sister had been sexually assaulted as a teenager. The court inquired whether the juror could be fair and impartial, and noted its belief that the purported victim was 12 or 13.

The trial court should not have expressed its personal belief of the victim's age, but should have told the juror that the State contends the victim was 12 or 13. The trial court's comment was technically improper. We are nevertheless satisfied that the comment could not have resulted in prejudice. Here, both J.P. and her mother testified that J.P. was 13 at the time of the purported offenses. Alvarez did not rebut this testimony in any way.

Alvarez cites *State v. Jackman*, 156 Wn.2d 736, 132 P.3d 136 (2006) for the proposition that a trial court's instruction as to the age of the victim is a comment on the evidence that requires reversal and retrial. *Jackman* is distinguishable.

In *Jackman*, the State charged the defendant with three counts of sexual exploitation of a minor, three counts of communication with a minor for immoral purposes, four counts of furnishing alcohol to a minor, and one count of patronizing a

juvenile prostitute. *Id.* at 740. The victims testified at trial and gave their dates of birth to support the State's contention that they were all minors at the time of the purported crimes. *Id.* at 740, 742-43. The trial court instructed the jury, and 11 of the 12 to-convict instructions contained the victims' dates of birth consistent with their trial testimonies. *Id.* at 742. The defendant did not object to these instructions, and he was convicted on all counts. *Id.* at 741. On appeal, the defendant argued that the 11 instructions were improper judicial comments on the evidence. The Supreme Court agreed. *Id.* at 744. The Supreme Court then concluded that the State could not prove that the improper comments resulted in no prejudice. *Id.* at 745. In so concluding, the court noted that two of the victims admitted at trial they had lied to the defendant about their ages, and the jury could have found that these and the other victims lied at trial about their ages. *Id.* at 744 n.7, 745.

In contrast here, the jury could not have found J.P.'s age to be anything other than 13. The trial court's isolated comment during voir dire that it thought the victim was 12 or 13 was de minimis, compared to *Jackman*, where the trial court reiterated dates of birth on 11 of the 12 to-convict instructions.

> *Court read charging document with J.P.'s date of birth*

17

Alvarez's second contention asserts the court commented on the evidence by reading the charging document to the jury, which contained J.P.'s date of birth. The trial court read the charging document, and thereafter added:

> The first amended information in this case is only an accusation against the defendant . . . . You are not to consider the filing of the . . . information or its contents as proof of the matters charged.
> It is your duty to determine the facts in this case from the evidence produced in court.

2 RP at 207. An accurate summary of the accusations, together with an appropriate explanation that the summary is not evidence, does not constitute a judicial comment on the evidence. *Sivins*, 138 Wn. App. at 61.

### *Jury instruction contained Alvarez's date of birth*

Alvarez's final contention argues the court commented on the evidence because the jury instructions contained *his* date of birth. The cover page of the court's amended instructions contained Alvarez's date of birth. The cover page was not read to the jury, and Alvarez's date of birth under his name is hardly noticeable. Even had the jury noticed it, the court's instructions contained an admonition for the jury to consider only evidence that was admitted through testimony or exhibits and to disregard any possible comments on the evidence by the court. We presume the jury followed these instructions.

18

Here, Mr. Alvarez testified to his son's age. His testimony was not contested. To obtain a conviction, the State was not required to prove Alvarez's age. It was only required to prove that Alvarez was more than 36 months older than 13-year-old J.P. The jury could see that Alvarez—physically very large—was an adult. For these reasons, we conclude that the State has established that no prejudice could have resulted from the appearance of Alvarez's date of birth on the cover page to the court's instructions.

CUMULATIVE ERROR

Alvarez contends the trial court erred multiple times and if these errors, alone, do not warrant reversal, the errors cumulatively warrant reversal. Cumulative error claims are constitutional issues, which an appellate court reviews de novo. *State v. Clark*, 187 Wn.2d 641, 649, 389 P.3d 462 (2017). To receive relief based on the cumulative error doctrine a "defendant must show that while multiple trial errors, 'standing alone, might not be of sufficient gravity to constitute grounds for a new trial, the combined effect of the accumulation of errors most certainly requires a new trial.'" *Id.* (quoting *State v. Coe*, 101 Wn.2d 772, 789, 684 P.2d 668 (1984)). When there are no errors or the errors have little to no effect on the trial's outcome, the cumulative error doctrine does not apply. *State v. Greiff*, 141 Wn.2d 910, 929, 10 P.3d 390 (2000).

Here, the trial court erred when it allowed Ms. Murstig to testify that J.P.'s statements to Officer Nelson were consistent with J.P.'s statements to her. But this clearly was not prejudicial because the jury's verdicts showed the jury did not believe Ms. Murstig. The trial court also erred by twice commenting on the evidence. But both of these comments were very minor. We are persuaded that these minor errors had no effect on the outcome of the trial. The jury convicted Alvarez based on solid forensic evidence, evidence for which Alvarez had no credible alternative explanation.

COMMUNITY CUSTODY CONDITIONS

Alvarez challenges seven of his community custody conditions. The State first responds that Alvarez cannot challenge the community custody conditions because he had an opportunity to collaboratively draft them but did not participate, and he did not object to them at the trial court. We disagree with the State's initial argument.

An unlawful sentence may be challenged for the first time on appeal. *State v. Ford*, 137 Wn.2d 472, 477, 973 P.2d 452 (1999). Defendants may generally challenge community custody conditions that are contrary to statutory authority for the first time on appeal. *State v. Bahl*, 164 Wn.2d 739, 745, 193 P.3d 678 (2008). We review community custody conditions for an abuse of discretion. *State v. Irwin*, 191 Wn. App. 644, 652, 364 P.3d 830 (2015). "An abuse of discretion occurs only when the decision of the court is

'manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons.'"

*McCormick*, 166 Wn.2d at 706 (quoting *Carroll*, 79 Wn.2d at 26). The abuse of

discretion standard applies when this court is reviewing a crime-related condition. *Irwin*,

191 Wn. App. at 656.

Generally, courts may impose crime-related conditions on a defendant during their

time in community custody. RCW 9.94A.505(9), .703(3)(f). A "'[c]rime-related

prohibition' . . . prohibit[s] conduct that directly relates to the circumstances of the crime

for which the offender has been convicted . . . . " RCW 9.94A.030(10). "'Directly

related' includes conditions that are 'reasonably related' to the crime." *Irwin*, 191 Wn.

App. at 656 (quoting *State v. Kinzle*, 181 Wn. App. 774, 785, 326 P.3d 870 (2014)).

*Conditions 4 & 5: Consuming or unlawfully possessing controlled substances*

Alvarez argues conditions 4 and 5 are not crime related and are unconstitutionally

vague. We agree in part.

Condition 4 reads: "not consume controlled substances except pursuant to lawfully

issued prescriptions." Clerk's Papers (CP) at 121. Alvarez's contention that this

condition is not related to his crime of conviction is unpersuasive. This condition is a

waivable condition under RCW 9.94A.703(2)(c). A waivable condition does not have to

be crime related in order to be imposed. *In re Pers. Restraint of Brettell*, 6 Wn. App. 2d 161, 173, 430 P.3d 677 (2018).

Alvarez argues in the alterative that condition 4 is unconstitutionally vague because it is unclear whether it includes marijuana and, if it does, how it interacts with Washington's legalization of marijuana coupled with the differing jurisdictions in which marijuana remains illegal. We also find this argument unpersuasive. The abuse of discretion standard applies when this court is reviewing a community custody condition for vagueness. *Irwin*, 191 Wn. App. at 652.

The due process clause contained in the Fourteenth Amendment to the United States Constitution and article I, section 3 of the Washington Constitution require that laws not be vague. *Magana*, 197 Wn. App. at 200. The protections against vagueness extend to community custody conditions because they can subject a person to incarceration. *State v. Sanchez Valencia*, 169 Wn.2d 782, 791-92, 239 P.3d 1059 (2010). A condition is not vague if it (1) provides ordinary people with fair warning of the proscribed conduct, and (2) has standards that are definite enough to "'protect against arbitrary enforcement.'" *Magana*, 197 Wn. App. at 200-01 (internal quotation marks omitted) (quoting *Bahl*, 164 Wn.2d at 753).

Condition 4 is not unconstitutionally vague. Under federal law, marijuana is a schedule I controlled substance. 21 U.S.C. § 812(c)(10), (17). Washington law defines "controlled substance" as a substance included in schedule I under federal law. Former RCW 69.50.101(d) (2015). Therefore, it is clear, marijuana remains a "controlled substance" under Washington law. As Alvarez notes, a health care professional cannot write a prescription for marijuana, but only issue valid documentation authorizing the medical use of marijuana. RCW 69.51A.030(2)(b); *see generally* RCW 69.50.308. Because a person cannot obtain a prescription for marijuana, the sentencing condition allowing the use of controlled substances with a lawfully issued prescription does not apply to marijuana. The condition provides fair warning to Alvarez and its terms are adequately defined to prevent arbitrary enforcement. *Magana*, 197 Wn. App. at 200-01.

Alvarez also contends condition 5 is not crime related and is unconstitutionally vague. Condition 5 reads: "not unlawfully possess controlled substances while in community custody." CP at 121. This condition is not a mandatory or waivable condition under RCW 9.94A.703(1)-(2). Thus, it is a discretionary condition under RCW 9.94A.703(3)(f) and it must be crime related in order to be imposed.

The State presented no evidence that consuming or possessing controlled substances was in any way related to the crime for which Alvarez was convicted. The

State argues that Alvarez has a history of drug abuse, drug addiction, and drug related convictions. While this may be true, community custody conditions must be "relate[d] to the circumstances *of the crime for which the offender has been convicted*." RCW 9.94A.030(10) (emphasis added). "'Directly related' includes conditions that are 'reasonably related' to the crime." *Irwin*, 191 Wn. App. at 656 (quoting *Kinzle*, 181 Wn. App. at 785). The State's argument revolves around Alvarez's history, not the specific facts related to this conviction. Because there is no evidence that any type of controlled substance was related to the conviction at hand, community custody condition 5 is not crime related.[5]

### *Conditions 12 & 13: Advise [Department of Corrections (DOC)] of sexual partners and disclose sexual history to sexual partners*

Alvarez argues conditions 12 and 13, which require Alvarez to advise the DOC of current sexual partners and to disclose his sexual criminal history to sexual partners are not crime related and violate the First Amendment. We disagree with both contentions. Because Alvarez was convicted of rape of a child, conditions requiring him to disclose sexual relationships to DOC and inform sexual partners of his status are crime related. *See In re Pers. Restraint of Tillman*, No. 51181-9-II, slip op. at 1 (Wash. Ct. App. June 5,

---

[5] Alvarez's argument that condition 5 is also unconstitutionally vague is moot.

2018) (unpublished) http://www.courts.wa.gov/opinions/pdf/D2%2051181-9-

II%20Unpublished%20Opinion.pdf.[6]

Alvarez's First Amendment contentions also fail. An offender's freedom may be

limited when the restriction is "'reasonably necessary to accomplish the essential needs

of the state and public order.'" *State v. Riley*, 121 Wn.2d 22, 37-38, 846 P.2d 1365

(1993) (quoting *Malone v. United States*, 502 F.2d 554, 556 (9th Cir. 1974)). Alvarez's

conditions do not limit his freedom of association; it merely affects his privacy. *See In re*

*Pers. Restraint of Waggy*, 111 Wn. App. 511, 518, 45 P.3d 1103 (2002). The Washington

Supreme Court has recognized the State has a legitimate interest in informing the public

about "potentially dangerous individuals." *In re Pers. Restraint of Meyer*, 142 Wn.2d

608, 620-21, 16 P.3d 563 (2001). The conditions requiring Alvarez to disclose sexual

partners to DOC and to disclose his history to sexual partners are conditions reasonably

necessary to accomplish the essential needs of the state and public order. *Riley*, 121

Wn.2d at 37-38.

---

[6] Under GR 14.1, unpublished opinions have no precedential value, but may be
cited as nonbinding authorities and accorded such persuasive value as the court deems
appropriate.

25

*Additional condition 4: Contact with minor children under 18 including biological children*

Alvarez argues additional condition 4 should contain an exception for his own biological children. Alvarez presently has no biological children. But because we are remanding to strike some conditions, it is proper to direct the trial court to amend this condition to permit an exception for Alvarez's own children, should he later have any.

Alvarez also argues the restriction to all minors over 16 and under 18 is not crime related because his crime was against a child under 16. We disagree.

Prevention of harm to children is a compelling state interest. *See, e.g.*, *In re Dependency of C.B.*, 79 Wn. App. 686, 690, 904 P.2d 1171 (1995). Restricting access to minors under 18 is reasonably related to the crime. Alvarez preyed on, and took advantage of, a minor under 18. The trial court concluded that minors under the age of 18 should be protected from Alvarez, and the condition is reasonably related to Alvarez's conviction.

*Additional condition 5: Polygraph testing*

Alvarez argues additional condition 5 should be struck or modified to limit polygraphs to compliance with his other community custody conditions. We agree.

Polygraphs may be utilized to monitor compliance with community custody conditions. *State v. Combs*, 102 Wn. App. 949, 952, 10 P.3d 1101 (2000). The testing

should be limited, however, to monitor compliance with other community custody

conditions, and not used "as a fishing expedition to discover evidence of other crimes,

past or present." *Id.* at 953. Because the condition is not limited in this fashion, we

remand for the court to add language limiting the scope of the polygraph testing.

### *Additional condition 6: Search of electronic devices by DOC*

Alvarez argues additional condition 6 allows unfettered access to any electronic

device Alvarez possesses and is in violation of Alvarez's article I, section 7 right against

searches and seizures. We agree and remand to strike this condition.

To determine whether a preenforcement challenge to a community custody

condition is ripe for review, the court examines "'if the issues raised are primarily legal,

do not require further factual development, and the challenged action is final.'" *Sanchez*

*Valencia*, 169 Wn.2d at 786 (internal quotation marks omitted) (quoting *Bahl*, 164 Wn.2d

at 751). Then, the court also considers the hardship imposed on the petitioner if the

challenged condition is not reviewed on appeal. *Id.* Here, the community custody

condition is a final action, Alvarez's challenge raises a legal issue and no further factual

development is required. *See State v. Cates*, 183 Wn.2d 531, 354 P.3d 832 (2015).

In *Cates*, the defendant was convicted of two counts of first degree rape of a child

and two counts of first degree child molestation. *Id*. at 532. Among other community

27

custody conditions, the court entered a provision that read: "'You must consent to [Department of Corrections] home visits to monitor your compliance with supervision. Home visits include access for the purposes of visual inspection of all areas of the residence in which you live or have exclusive/joint control/access, to also include computers which you have access to.'"[7] *Id.* at 533 (alteration in original). The defendant challenged this condition on appeal, arguing it violated the Washington Constitution because it authorized searches not based on probable cause. *Id.* The Supreme Court upheld the condition, finding it was not ripe for review.

The court recognized that, as written, the condition did not authorize any searches, and the inspections were limited to monitor the defendant's compliance with supervision. *Id.* at 535. It further reasoned that "[s]ome future misapplication of the community custody condition might violate article I, section 7, but that 'depends on the particular circumstances of the attempted enforcement.'" *Id.* (quoting *Sanchez Valencia*, 169 Wn.2d at 789). The court held that the State must attempt to enforce the provision before review would be appropriate. *Id.*

Alvarez's condition is different from the condition in *Cates*. Here, the condition requires Alvarez to "[a]llow a full search of [his] cell phone/computer or other electronic

---

[7] This condition is similar to Alvarez's condition 8.

device as directed by DOC staff." CP at 174. Unlike *Cates*, this condition does in fact allow searches. This condition is not limited to monitor compliance with supervision; it is unlimited. Finally, the condition is not required to be based on probable cause—the DOC may search, and Alvarez must consent, at any time for any reason. Therefore, the condition violates article I, section 7 on its face and should be struck.[8]

In sum, condition 5 must be struck because it is not crime related and, thus, the court exceeded its authority. Additional condition 6 must also be struck because it is in violation of the Washington Constitution, article I, section 7. Finally, additional condition 5 is remanded for the court to limit polygraph testing to monitor Alvarez's compliance with other community custody conditions.

CRIMINAL FILING FEE

Alvarez asks this court to strike his $200 criminal filing fee pursuant to the holding in *State v. Ramirez*, 191 Wn.2d 732, 426 P.3d 714 (2018).

House Bill 1783, which became effective June 7, 2018, prohibits trial courts from imposing discretionary legal financial obligations (LFOs) on defendants who are indigent at the time of sentencing. LAWS OF 2018, ch. 269, § 6(3); *Ramirez*, 191 Wn.2d at 738,

---

[8] Alvarez also challenges this condition as not being crime related. We agree and would require the condition to be struck for this reason also. Alvarez's crime did not involve any use of electronics, and the condition is not limited to ensure compliance with

747.  This change to the criminal filing fee statute is now codified in RCW

36.18.020(2)(h).  As held in *Ramirez*, these changes to the criminal filing fee statute apply

prospectively to cases pending direct appeal prior to June 7, 2018.  *Ramirez*, 191 Wn.2d

at 747.  Accordingly, the change in law applies to Alvarez's case.  Because Alvarez is

indigent, the criminal filing fee must be struck pursuant to *Ramirez*.

STATEMENT OF ADDITIONAL GROUNDS FOR REVIEW (SAG)

Alvarez filed an original and a supplemental SAG, which contain at least 20

arguments why his conviction should be reversed.  We organize his arguments by subject

matter and consolidate them for brevity.

SAG Ground 1:  JURY SELECTION

*1A.  Jury selection: Jurors 8 and 14*

Alvarez contends that jurors 8 and 14 had the same name, which likely caused a

conflict.  Jurors 8 and 14 had different names.

*1B.  Jury selection: Juror 10*

Alvarez contends that juror 10 was improperly left on the panel.  He argues that

juror 10 had an appointment on the afternoon of deliberations that likely caused the jury

to rush deliberations.  This is a bare assertion.  Juror 10 had an appointment—but juror 10

his other conditions.

stated it could be changed. There is no evidence that juror 10 did not change the

appointment and rushed deliberations.

    *1C. Jury selection: Jurors 25 and 26*

    Alvarez contends jurors 25 and 26 participated in voir dire after they were struck.

Also, juror 25 learned J.P.'s age during voir dire. He asserts that this tainted the jury.

    There is no record of juror 25 participating in voir dire after being struck.

Although juror 25 learned the age of J.P. during individual voir dire, juror 25 was struck

for cause. Thus, that knowledge had no impact on the case.

    Juror 26 was struck for cause during individual voir dire. For some reason, juror

26 returned for general voir dire. Juror 26 answered a question about prior jury service

and how prior service on a hung jury was frustrating. Counsel recognized the mistake

and excused juror 26. We reject Alvarez's contentions that one comment about being on

a hung jury tainted the rest of the jury pool.

    *1D. Jury selection: Not screened for conflicts with Ashley Lucas or Jeffrey Porteous*

    Alvarez contends the potential jurors were not screened for conflicts with two

witnesses. He asserts this could have created a conflict in the jury and denied him a fair

trial by an impartial jury. Alvarez has not included admissible facts to show that this

failure to screen actually resulted in conflicts. Because his argument relies on facts

outside the record, the appropriate course of relief is through a personal restraint petition.

*State v. McFarland*, 127 Wn.2d 322, 335, 899 P.2d 1251 (1995).

SAG Ground 2:  JURY INSTRUCTIONS

*2A.  Jury instructions: Instruction 6*

Alvarez contends the court erred and read jury instruction 6 that was previously

removed.  Instruction 6 was the definition of "sexual contact" under RCW 9A.44.010(2).

The parties had previously agreed to remove the instruction before the court read the

instructions to the jury, but the instruction accidentally remained in the jury packet.  The

court read it to the jury.  At a sidebar, the parties agreed it should have been removed and

agreed for the court to re-read the instruction to the jury to notify them which instruction

would be removed.  The second time through the instruction, the court said "sexual act"

instead of "sexual contact."  Alvarez claims this misstep requires reversal.  The court, per

agreement of the parties, removed instruction 6.  The court's mistake in reading it to the

jury, then re-reading and saying "sexual act" instead of "sexual contact" was harmless.

The instruction was removed.

*2B. Jury instructions: Erroneous* Petrich[9] *instruction*

Alvarez contends jury instruction 10 did not contain the required elements. Jury instruction 10 was not the element instruction. The elements were included in instruction 8.

SAG Ground 3: DETECTIVE ROMERO'S TESTIMONY

*3A. Detective Romero's testimony: Statements about flight risk*

Alvarez contends Detective Romero's statements about arresting Alvarez because he was unemployed and a flight risk were prejudicial and robbed Alvarez of a fair trial. Alvarez's counsel objected at trial, and the court sustained the objection and instructed the jury to disregard the testimony. The law presumes this remedy was effective. *State v. Swan*, 114 Wn.2d 613, 661-64, 790 P.2d 610 (1990).

Essentially, Alvarez argues the trial court should have declared a mistrial sua sponte. An appellant who does not request a remedy forfeits that claim. "'Counsel may not remain silent, speculating upon a favorable verdict, and then, when it is adverse, use the claimed misconduct as a life preserver on a motion for a new trial or on appeal.'"

---

[9] *State v. Petrich*, 101 Wn.2d 566, 572, 683 P.2d 173 (1984), *overruled in part on other grounds by State v. Kitchen*, 110 Wn.2d 403, 406 n.1, 756 P.2d 105 (1988), *abrogated in part on other grounds by In re Pers. Restraint of Stockwell*, 179 Wn.2d 588, 316 P.3d 1007 (2014).

*State v. Russell*, 125 Wn.2d 24, 93, 882 P.2d 747 (1994) (quoting *Jones v. Hogan*, 56 Wn.2d 23, 27, 351 P.2d 153 (1960)).

    *3B.  Detective Romero's testimony: Scope of testimony*

    Alvarez argues the State was able to question Detective Romero outside the scope of his impeachment testimony of Alvarez's two witnesses.  We review the trial court's decision to admit testimony for an abuse of discretion.  *State v. Demery*, 144 Wn.2d 753, 758, 30 P.3d 1278 (2001).  The State's redirect of Detective Romero was proper responsive testimony to Alvarez's witnesses who testified to impeach the credibility of J.P.  Detective Romero's testimony was limited to rehabilitating the witness, and the trial court did not abuse its discretion by allowing it.

    <u>SAG Ground 4:</u>  CHARGING DOCUMENT

    Alvarez argues the charging document did not contain the essential elements needed for a conviction—they were constitutionally deficient.  The charging document merely stated "sexual intercourse," which can be found and accomplished in many different ways.  Alvarez argues this ambiguity did not put him on notice of the "means" by which sexual intercourse was accomplished thus making the charging document deficient.

A defendant may challenge the sufficiency of the charging document for the first time on appeal, but the court liberally construes the document in favor of validity. *State v. Kjorsvik*, 117 Wn.2d 93, 105-06, 812 P.2d 86 (1991). The court will look at (1) whether the necessary facts appear in any form or can be found by fair construction, and if so (2) whether the defendant suffered actual prejudice as a result of the vague or ambiguous language. *Id.*

The basis of Alvarez's contention is that the information did not define "sexual intercourse." The definition of sexual intercourse is not a statutory element and not necessary to include in the charging document. Therefore, the charging document was sufficient. Similar language has been upheld. *See State v. Botello-Garcia*, No. 46355-5-II, slip op. at 5-6 (Wash. Ct. App. Apr. 26, 2016) (unpublished), http://www.courts.wa.gov/opinions/pdf/46355-5.16.pdf;[10] CP at 161. We conclude that the charging document alleged and defined the offense with sufficient certainty to give Alvarez notice of the crime.

---

[10] Under GR 14.1, unpublished opinions have no precedential value, but may be cited as nonbinding authorities and accorded such persuasive value as the court deems appropriate.

SAG Ground 5: MOTION IN LIMINE

Alvarez argues the court erred by granting a motion in limine to exclude character evidence of J.P. J.P.'s actions of sneaking a dress into school, changing into it, taking pictures in it, then changing back out of it, should have been admitted to show J.P.'s untruthfulness and deceitfulness. Alvarez also argues the trial court erroneously excluded character evidence about J.P.'s prior discipline problems at school and home.

The trial court reserved ruling on the motion in limine about J.P.'s actions with the dress, but otherwise excluded other character evidence. A trial court's ruling on a motion in limine is reviewed for an abuse of discretion. *State v. Powell*, 126 Wn.2d 244, 258, 893 P.2d 615 (1995); *State v. Munguia*, 107 Wn. App. 328, 335, 26 P.3d 1017 (2001). Generally, character evidence is not admissible "for the purpose of proving action in conformity therewith on a particular occasion." ER 404(a). Other wrongs or acts are also inadmissible for that purpose. ER 404(b). Alvarez does not argue that an exception applies to J.P.'s discipline history; therefore, we reject his contention. The trial court did not abuse its discretion in excluding that evidence.

The court revisited the reserved motion in limine during trial. Alvarez's counsel was able to question J.P. about the dress she showed Alvarez after the rape. Counsel

conceded not to elicit other testimony about prior incidents with the dress. Because the court did not rule on this, the court could not have abused its discretion.

SAG Ground 6:  MR. PORTEOUS'S TESTIMONY

Alvarez argues the trial court erred by allowing the State to examine Mr. Porteous outside the scope of redirect during recross. Whether a line of questioning on cross-examination is properly within the scope of direct examination is within the trial court's discretion. *State v. McDaniel*, 83 Wn. App. 179, 184, 920 P.2d 1218 (1996). The trial court properly exercised its discretion to allow the State to examine Mr. Porteous on recross.

Initially, Alvarez called Mr. Porteous as a witness and questioned him about the interview with J.P. Mr. Porteous testified to statements J.P. did not make in her interview that seemed to contradict her trial testimony. The State cross-examined Mr. Porteous about that interview. Specifically, the State elicited testimony that Mr. Porteous was not asking the questions to J.P., and Alvarez's counsel may have done a poor job posing the right questions to J.P. On redirect, Alvarez asked more questions about the interview to explain some of Mr. Porteous's responses to the State's cross-examination. The State recrossed and asked for a description of the room where the interview took place. Alvarez objected, arguing the question was outside the scope of redirect. The trial court

overruled, and the State was able to briefly question Mr. Porteous about the interview room, the hallway to the room, and who was in the room during the interview. This recross was within the scope of redirect. Alvarez questioned Mr. Porteous about the interview, and the State's questions were directly related to the interview.

SAG Ground 7:  DNA EVIDENCE

Alvarez argues the DNA evidence was unreliable and insufficient because it did not come from an untainted source. He argues the underwear was gathered by J.P.'s mother and was initially located in a hamper with other clothes, including a towel that could have contained his DNA.

At trial, Alvarez did not seek to exclude the evidence as unreliable. We conclude he has waived his right to review on this issue. *State v. Guloy*, 104 Wn.2d 412, 422, 705 P.2d 1182 (1985); *see also State v. Blake*, 172 Wn. App. 515, 530, 298 P.3d 769 (2012).

Because Alvarez also challenges the sufficiency of the evidence, he admits the truth of all the State's evidence. *State v. Cardenas-Flores*, 189 Wn.2d 243, 265, 401 P.3d 19 (2017). "Evidence is sufficient to support a guilty verdict if any rational trier of fact, viewing the evidence in the light most favorable to the State, could find the elements of the charged crime beyond a reasonable doubt." *Id.* "[A]ll reasonable inferences from the

38

evidence must be drawn in favor of the State and interpreted most strongly against" Alvarez. *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992).

To find Alvarez guilty of rape of a child in the second degree, the jury had to find that Alvarez had "sexual intercourse with another who is at least twelve years old but less than fourteen years old and not married to the perpetrator and the perpetrator is at least thirty-six months older than the victim." RCW 9A.44.076(1). "Sexual intercourse" means "any act of sexual contact between persons involving the sex organs of one person and the mouth or anus of another." RCW 9A.44.010(1)(c). "'Sexual contact' means any touching of the sexual or other intimate parts of a person done for the purpose of gratifying sexual desire of either party or a third party." RCW 9A.44.010(2).

Here, viewing all of the State's evidence as true, there was sufficient evidence to convict Alvarez of rape of a child in the second degree. J.P. was 13 at the time of the rape. Alvarez was 26. J.P. was not married to Alvarez. J.P. testified that while upstairs, Alvarez put one to three fingers inside of her vagina. Then, Alvarez used his tongue on J.P.'s vagina. While this occurred, Alvarez was "pulling on himself." 3 RP at 452. It is clear the elements were met, and a rational jury could have found Alvarez guilty.

The State's forensic expert testified she found saliva and male DNA on the inside crotch of the underwear worn by J.P. during the purported offenses. J.P. testified that

Alvarez performed oral sex on her. Alvarez offered no credible alternative explanation for the presence of saliva and male DNA on the inside crotch of J.P.'s underwear. There was sufficient evidence to sustain his conviction.

SAG Ground 8: J.P.'S TESTIMONY

Alvarez argues J.P.'s testimony was insufficient for conviction. J.P.'s story and allegations changed multiple times. He argues the court erred by allowing this testimony. He further argues, even after the court learned J.P. recanted, it still sentenced him despite the perjured testimony.

As stated earlier, to find Alvarez guilty of rape of a child in the second degree, the jury had to find that Alvarez had "sexual intercourse with another who is at least twelve years old but less than fourteen years old and not married to the perpetrator and the perpetrator is at least thirty-six months older than the victim." RCW 9A.44.076(1).

Here, there was sufficient evidence to convict Alvarez of rape of a child in the second degree. J.P. was 13 at the time of the rape. Alvarez was 26. J.P. was not married to Alvarez. J.P. testified that while upstairs, Alvarez put one to three fingers inside her vagina. Then, Alvarez used his tongue on J.P.'s vagina. While this occurred, Alvarez was "pulling on himself." 3 RP at 452. It is clear the elements were met, and a rational jury could have found Alvarez guilty.

40

Alvarez did not object to the admission of J.P.'s testimony. Therefore, he waived his right to review on this issue. *Guloy*, 104 Wn.2d at 422; *see also Blake*, 172 Wn. App. at 530.

Alvarez argues that because he is seeking a recantation, and J.P.'s mother met with Alvarez's counsel after trial, this means J.P. recanted her allegations. There is no evidence of an actual recantation beyond Alvarez's accusations. When claims depend on evidence outside the record, those claims are properly raised through a personal restraint petition. *McFarland*, 127 Wn.2d at 335.

SAG Ground 9:  INEFFECTIVE ASSISTANCE OF COUNSEL

Each defendant has the right to receive effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). Effective assistance of counsel is a mixed question of law and fact that we review de novo. *Id.* at 698. We apply a two-pronged test to determine whether counsel provided effective assistance: (1) whether counsel's performance was deficient, and (2) whether that deficient performance prejudiced the defendant to an extent that *changed the result of the trial*. *Id.* at 687. We can address the second prong initially "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice." *Id.* at 697.

41

> 9A.  *Ineffective assistance of counsel: Not filing motions*

Alvarez argues he received ineffective assistance of counsel because his attorney did not file a motion to suppress the DNA evidence, a motion to exclude J.P.'s testimony, a motion to dismiss due to insufficient evidence, a motion to dismiss for an insufficient charging document, and a motion for retrial after J.P.'s recantation.  To show prejudice for counsel's failure to make a motion, a defendant must show the motion likely would have been granted.  *In re Pers. Restraint of Davis*, 152 Wn.2d 647, 711, 101 P.3d 1 (2004).

Alvarez's motion to exclude J.P.'s testimony or the DNA evidence would likely not have been granted.  Alvarez merely asserts J.P.'s testimony is inconsistent and unreliable.  However, evidence is relevant and, therefore, admissible when it has any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.  ER 401, 402.  This threshold is very low.  *State v. Briejer*, 172 Wn. App. 209, 225-26, 289 P.3d 698 (2012).  Alvarez's arguments go more to the *weight* of this evidence, which is properly explored on cross-examination and determined by the jury.

Alvarez's motion to dismiss due to insufficient evidence would likely not have been granted.  There was evidence presented that Alvarez touched J.P.'s sexual parts for

the purpose of gratifying sexual desire and that J.P. was between 12 and 14 years old, not married to Alvarez, and Alvarez was more than 36 months older than J.P. *See* RCW 9A.44.076(1).

Alvarez's motion to dismiss due to an insufficient charging document would likely not have been granted. As stated earlier, the charging document contained the necessary elements.

Alvarez does not show his motion for retrial would have been granted. There is no evidence of an actual recantation beyond Alvarez's accusations.

Because Alvarez cannot show any of his proposed motions would likely have been granted, his claims of ineffective assistance of counsel fail. *See Davis*, 152 Wn.2d at 711.

*9B. Ineffective assistance of counsel: Not objecting to amended information*

Alvarez argues he received ineffective assistance of counsel because his attorney did not object to the State's amended information. The mere filing of additional charges after a defendant refuses a guilty plea is not sufficient for a finding of prosecutorial vindictiveness. *State v. Korum*, 157 Wn.2d 614, 629, 141 P.3d 13 (2006).

*9C. Ineffective assistance of counsel: Not objecting to community custody conditions*

Alvarez argues he received ineffective assistance of counsel because his attorney did not object to community custody conditions. Alvarez does not show how this alleged

43

error would have changed the result of the trial. *Strickland*, 466 U.S. at 687. Moreover, his community custody conditions have been addressed on appeal.

9D. *Ineffective assistance of counsel: Not presenting evidence*

Alvarez argues he received ineffective assistance of counsel because his attorney failed to present the audio recording and video recording of J.P.'s interviews. Alvarez contends the video and recordings would have shown J.P.'s inconsistent statements. Alvarez's counsel accomplished this by examining Mr. Porteous, Detective Romero, and J.P. at length about the interviews. Playing the lengthy interview video and recording would have been time consuming, and it was a legitimate strategic tactic not to present those to the jury.

9E. *Ineffective assistance of counsel: Not objecting to the exclusion of J.P.'s character evidence*

Alvarez argues he received ineffective assistance of counsel because his attorney failed to object to the court excluding evidence of J.P.'s character of past school and familial discipline. Even if Alvarez's counsel objected to the court excluding certain evidence about J.P.'s character, the objection would likely have been overruled. Alvarez asserts the information should have been admitted to show J.P.'s deceitfulness, flirtatiousness, and that she lied about the rape. Generally, character evidence is not admissible "for the purpose of proving action in conformity therewith on a particular

occasion." ER 404(a). Other wrongs or acts are also inadmissible for that purpose.

ER 404(b). Therefore, his argument fails.

    *9F. Ineffective assistance of counsel: Jury*

    Alvarez argues he received ineffective assistance of counsel because his attorney

did not screen potential jurors for a conflict with Ms. Lucas or Mr. Porteous, he failed to

remove juror 11 instead of juror 10, and he failed to remove juror 13. Alvarez does not

show how these alleged errors would have changed the result of the trial. *Strickland*, 466

U.S. at 687. Alvarez does not show the jury panel had an actual conflict with Ms. Lucas

or Mr. Porteous.

    As noted before, Alvarez asserts that because juror 10 had an appointment on the

afternoon of deliberations, it likely caused the jury to rush deliberations. This is a bare

assertion. Juror 10 had an appointment—but juror 10 stated it could be changed. There is

no evidence that juror 10 did not change the appointment and rushed deliberations. Juror

11 had an actual conflict to leave town during deliberations. It was a legitimate strategy

to remove juror 11 instead of 10.

    Alvarez does not show how not removing juror 13 would have changed the result

of the trial just because juror 13 learned J.P.'s age during voir dire. *Strickland*, 466 U.S.

at 687. J.P.'s age was uncontested at trial.

*9G. Ineffective assistance of counsel: Trial objections*

Alvarez argues he received ineffective assistance of counsel because his attorney failed to object to J.P. being referred to as "victim," Officer Nelson's hearsay testimony, and Officer Nelson's *Miranda*[11] testimony.

Alvarez generally alleges that his counsel and multiple witnesses referred to J.P. as "victim." This does not show how an objection and sustained ruling on that characterization of J.P. would have changed his conviction. *Strickland*, 466 U.S. at 687.

Officer Nelson's testimony about what Mr. Alvarez instructed him to tell Alvarez may have been hearsay, but Alvarez fails to show how the outcome of the trial would have been different if Officer Nelson's testimony was objected to and sustained. *Strickland*, 466 U.S. at 687.

Alvarez does not show how an objection and sustained ruling on Officer Nelson's *Miranda* testimony would have changed his conviction. *Strickland*, 466 U.S. at 687.

*9H. Ineffective assistance of counsel: Right to testify*

Alvarez argues he received ineffective assistance of counsel because his attorney intimidated him and advised him not to testify. There is no evidence that Alvarez's counsel intimidated him not to testify. Alvarez went on record to confirm he did not want

---

[11] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

to testify. If Alvarez's claim depends on evidence outside the record, that claim is properly raised through a personal restraint petition. *McFarland*, 127 Wn.2d at 335.

*9I. Ineffective assistance of counsel: Jury instructions*

Alvarez argues he received ineffective assistance of counsel because his attorney failed to object or correct jury instructions 10 and 13.

Alvarez argues the court erred by striking a certain part of jury instruction 13. However, Alvarez goes on to say this prevented the jury from considering the State's questions to Mr. Porteous as part of the record. Striking the State's leading questions from the record was a legitimate trial tactic.

As noted earlier, jury instruction 10 was not the required element instruction. The elements were included in instruction 8.

*9J. Ineffective assistance of counsel: Witness list*

Alvarez argues he received ineffective assistance of counsel because his attorney failed to file a witness list. Alvarez does not show how this would have changed his conviction. *Strickland*, 466 U.S. at 687.

*9K. Ineffective assistance of counsel: Mental health capacity*

Alvarez argues he received ineffective assistance of counsel because his attorney did not object to his mental health capacity. Alvarez does not explain why counsel should

47

have objected to Alvarez being found competent. Because we are unable to determine the nature of the claimed error, we will not review it. If Alvarez's claim depends on evidence outside the record, that claim is properly raised through a personal restraint petition. *McFarland*, 127 Wn.2d at 335.

### 9L. *Ineffective assistance of counsel: Sentencing*

Alvarez argues he received ineffective assistance of counsel because his attorney failed to object to the State's comment at sentencing, failed to correct the State's characterization of the crime, failed to object or correct the State's sentencing memorandum, and failed to argue for an exceptional mitigated sentence.

Counsel's failure to object to the State's comment at sentencing that "[Alvarez] continue[s] to molest" is harmless. RP (Aug. 25, 2017) at 9. Likewise, counsel's failure to object to the State's comment that Alvarez's history of sexual abuse occurs usually while watching movies with the victim was harmless. Finally, the State characterized Alvarez's crime as taking place over a couple hours in multiple rooms. Alvarez argues this is incorrect as he was only convicted of conduct that took place in the upstairs bedroom, and J.P.'s testimony was that it lasted an hour and one-half, not a couple hours. Alvarez cannot show with likelihood that any of these comments changed the sentence he received.

Counsel was not ineffective for failing to argue for an exceptional mitigated sentence. Alvarez's counsel argued for the low end of the sentencing range. The court was very mindful of the victim in this case and how this rape will affect her for the rest of her life. The court reasoned that the low end of the range was inappropriate considering the crime and the victim. On the other hand, the court believed the high end of the range was also not necessary. Therefore, the court imposed 110 months. Alvarez cannot show with substantial likelihood that if his counsel would have argued for an exceptional mitigated sentence that he would have received it—considering his counsel argued for the low end range and Alvarez did not receive a low end range sentence.

*9M. Ineffective assistance of counsel: Limiting instructions*

Alvarez argues he received ineffective assistance of counsel because his attorney failed to propose a limiting instruction for officers' reports, Detective Romero's testimony and J.P.'s testimony.

The "officers' reports" were not admitted into evidence. There were only six exhibits admitted into evidence—J.P.'s underwear and five photographs of the house, stairway, loft, and J.P.'s bedroom. Therefore, Alvarez's counsel could not limit their admissibility because they were not admitted to the jury. His argument that the officers'

reference to their reports was improper also fails. An officer may reference their report to refresh their recollection. ER 612.

Detective Romero's testimony was not limited to impeachment testimony. Detective Romero was called as a witness in the State's case-in-chief. He gave more than impeachment testimony. A limiting instruction was unsuitable with his testimony.

J.P.'s testimony was also not limited to impeachment testimony. She testified to the details of the rape. A limiting instruction was simply inconsistent with the testimony she gave.

### SAG Ground 10: PROSECUTORIAL MISCONDUCT

To prevail on a claim of prosecutorial misconduct, Alvarez must establish "'that the prosecutor's conduct was both improper and prejudicial in the context of the entire record and the circumstances at trial.'" *State v. Thorgerson*, 172 Wn.2d 438, 442, 258 P.3d 43 (2011) (internal quotation marks omitted) (quoting *State v. Magers*, 164 Wn.2d 174, 191, 189 P.3d 126 (2008)). Prejudice requires a showing of substantial likelihood that the prosecutor's misconduct affected the jury's verdict. *Id.* at 443. A failure to object to an improper remark waives review of the error unless it "'is so flagrant and ill intentioned that it causes an enduring and resulting prejudice that could not have been neutralized by an admonition to the jury.'" *Id.* (quoting *Russell*, 125 Wn.2d at 86).

No. 35567-5-III
*State v. Alvarez*

*10A. Prosecutorial misconduct: Insufficient evidence*

Alvarez contends the State charged without sufficient evidence and should have waited until the DNA results were done. "Prosecutors are given broad discretion in determining what charges to bring and when to file them." *City of Kennewick v. Fountain*, 116 Wn.2d 189, 194, 802 P.2d 1371 (1991). Alvarez has not shown any abuse of that discretion.

*10 B. Prosecutorial misconduct: Amended information was vindictive and against double jeopardy*

Alvarez contends the State's amended information was prosecutorial misconduct because it was vindictive and it violated double jeopardy principles. In his amended SAG,[12] Alvarez also argues the State's actions to stack an additional count after he refused a plea deal is inconsistent with the legislature's directives in RCW 9.94A.411.

Prosecutorial vindictiveness is the filing of additional or more serious charges in response to a defendant's exercise of a constitutional or procedural right. *Korum*, 157 Wn.2d at 627. An action is only vindictive if it is designed to punish or penalize the defendant. *Id.* The Sentencing Reform Act of 1981, chapter 9.94A RCW, provides guidelines to prosecutors—they do not constitute an enforceable right. *See*

---

[12] This amended SAG was filed on May 28, 2019, and Alvarez only asserted a new argument under this issue.

51

RCW 9.94A.401. A prosecutor should not overcharge a defendant in order to obtain a guilty plea, RCW 9.94A.411(2)(a)(i), (ii), but on the other hand, a prosecutor may charge other offenses if it significantly enhances its case. RCW 9.94A.411(2)(a)(i)(A).

Alvarez argues that the State was vindictive when it filed an additional count after he refused a plea deal. "[T]he mere filing of additional charges and the consequent increase in sentence . . . cannot support a presumption of vindictiveness . . . ." *Korum*, 157 Wn.2d at 634. Alvarez has not alleged facts beyond the mere filing of an additional count; therefore, his vindictiveness claim fails. This holding is consistent with precedent. *See Korum*, 157 Wn.2d 614 (finding no vindictiveness where State filed 16 additional felony charges after defendant withdrew guilty plea); *United States v. Goodwin*, 457 U.S. 368, 102 S. Ct. 2485, 73 L. Ed. 2d 74 (1982) (finding no prosecutorial vindictiveness where the United States Attorney obtained a felony indictment and conviction after defendant refused misdemeanor plea deal); *Bordenkircher v. Hayes*, 434 U.S. 357, 98 S. Ct. 663, 54 L. Ed. 2d 604 (1978) (finding no prosecutorial vindictiveness where prosecutor sought a habitual criminal indictment and defendant received life in prison after defendant rejected five-year sentence in exchange for his guilty plea). Here, the prosecutor was free to file an additional count after Alvarez rejected the plea deal. The initial charge did not set a ceiling on Alvarez's potential criminal liability.

52

Double jeopardy means a defendant cannot be prosecuted for the same offense after being acquitted, be prosecuted for the same offense after being convicted, or receive multiple punishments for the same offense. *State v. Villanueva-Gonzalez*, 180 Wn.2d 975, 980, 329 P.3d 78 (2014). Alvarez did not "receive multiple punishments for the same offense." He was only convicted of one count.

### 10C. *Prosecutorial misconduct: J.P.'s false testimony*

Alvarez contends the State coached J.P. into giving false testimony. There is no evidence of this in the record. If this claim depends on evidence outside the record, that claim is properly raised through a personal restraint petition. *McFarland*, 127 Wn.2d at 335.

### 10D. *Prosecutorial misconduct: Alvarez's right not to testify*

Alvarez contends the State improperly commented on his failure to testify. We find this comment was not improper. This comment was during jury voir dire, and the prosecutor asked a potential juror if the juror would hold it against a defendant if the defendant did not testify. The prosecutor also added it was a defendant's right not to testify. This is a proper question to uncover possible jury bias.

*10E. Prosecutorial misconduct: Speedy trial*

Alvarez contends the State used his right to a speedy trial against him by making comments about DNA evidence and testing during voir dire. However, most of the statements occurred at a sidebar with Alvarez's counsel and the court. The only questions posed by the State to the jury pool were whether the jury needed DNA evidence to convict, whether the jury would hold it against the State if DNA evidence was not tested, and whether the jury believed forensic testing occurs at the same speed in real life as it does on television. Alvarez objected to these questions, and the court instructed the State to go to a different line of questioning. Alvarez does not show prosecutorial misconduct, if any, about his right to a speedy trial. These were not flagrant or ill-intentioned statements.

*10F. Prosecutorial misconduct: Sentencing*

Alvarez contends the State proceeded with sentencing after knowledge of J.P.'s recantation. There is no evidence of an actual recantation beyond Alvarez's accusations. When claims depend on evidence outside the record, those claims are properly raised through a personal restraint petition. *McFarland*, 127 Wn.2d at 335.

SAG Ground 11:  OFFENDER SCORE

Alvarez argues his offender score was miscalculated because it included a prior

juvenile conviction.  Alvarez has a conviction for child molestation in the first degree in

2005.  Child molestation in the first degree is a class A felony.  RCW 9A.44.083.  Under

RCW 9.94A.525(2)(a), prior class A and felony sex convictions are always included in

the offender score.  Consistent with RCW 9.94A.525(17), because Alvarez's current

conviction was for a sex offense, any prior adult or juvenile sex convictions counted as

three points toward his offender score.  Therefore, his offender score was correct.

SAG Ground 12:  CUMULATIVE ERROR

Alvarez argues the aforementioned errors, cumulatively, deprived him of a fair

trial and warrant reversal.  Under RAP 10.10, the court will only review issues raised in

an SAG that are not duplicative of the briefing.  Alvarez's counsel already raised

cumulative error in briefing.  Because there are no errors with any of the additional issues

raised in Alvarez's SAG, his argument fails.

No. 35567-5-III
*State v. Alvarez*

Affirmed, but remand to strike some community custody conditions and the criminal filing fee.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_Lawrence-Berrey, C.J._
Lawrence-Berrey, C.J.

No. 35567-5-III

SIDDOWAY, J. (concurring) — I part ways with the lead opinion on the harmless error analysis. I believe that Officer Michael Nelson's testimony that Alvarez showed no surprise upon being told of J.P.'s allegation would have been significant to jurors. And the DNA[1] evidence was subject to credible challenge, given the concession of the State's expert that she could not eliminate the possibility that what tested positive as saliva could have been another bodily fluid, she could not say that it was from a male, she found both female and male DNA, and that if not carefully handled and stored, evidence can easily be contaminated with third party DNA. When asked during her testimony to remove the underwear from its evidence bag to show the jury where she had taken a sample, she explained that she would try not to speak over it "because I don't want to contaminate it with my own saliva or any other DNA," and "people spit when they talk." 3 Report of Proceedings at 522, 527. If it was error to admit Officer Nelson's testimony about Alvarez's reaction, it was not harmless.

As for Mari Murstig's testimony about the consistency of J.P.'s statements, I agree that the error in admitting it was harmless—not because the DNA evidence could not credibly be challenged, but because jurors were likely to rely on their own assessment of the consistency of J.P.'s statements rather than on Ms. Murstig's assessment.

_Siddoway, J._

Siddoway, J.

---

[1] Deoxyribonucleic acid.

No. 35567-5-III

FEARING J. (concurring) — I concur in the court's affirmation of the conviction of
Jeremy Alvarez for one count of second degree rape of a child. I agree with all of the
lead opinion's rulings except the ruling that would hold harmless the introduction of
evidence of Jeremy Alvarez's expression when confronted by a law enforcement officer,
assuming the evidence to be inadmissible.

Sound reason exists to apply the state and federal constitutions' privilege against
self-incrimination to an accused's silence in response to a law enforcement officer's
accusation of a crime before an arrest of the accused. An accused holds no obligation to
respond to questions asked by a law enforcement officer. The law enforcement officer
could delay an arrest in order to question the accused in order to employ for a conviction
any silence in face of an accusation. Allowing the introduction of evidence of such
silence conflicts with the principle that the State may not comment on the accused's
silence or failure to testify at trial. *Griffin v. California*, 380 U.S. 609, 610 n.2, 613, 85 S.
Ct. 1229, 14 L. Ed. 2d 106 (1965). Still, because of Washington Supreme Court and
United States Supreme Court precedent, a higher court would need to modify the law in

order to apply the constitutional right against self-incrimination to prearrest silence. *Salinas v. Texas*, 570 U.S. 178, 133 S. Ct. 2174, 186 L. Ed. 2d 376 (2013) (plurality opinion); *State v. Earls*, 116 Wn.2d 364, 375, 805 P.2d 211 (1991); *State v. Moore*, 79 Wn.2d 51, 57, 483 P.2d 630 (1971).

The State sought to introduce evidence of Jeremy Alvarez's reaction, when faced with an accusation, to show consciousness of guilt. Aside from the constitutional question, I question the relevance of silence as tending to prove guilt and further question the probative value of evidence of silence when compared to its prejudicial impact. This questioning increases under circumstances when the State does not introduce evidence of the accused's failure to verbally respond to an accusation, but introduces testimony of facial expressions. One's facial expressions remain subject to subjective interpretations of the viewer. No matter the response of an accused to an accusation, law enforcement may interpret the response as evidence of guilt. If the accused, instead of remaining silent or staring blankly, denies the accusation with a look of surprise, law enforcement may interpret the response as protesting too much.

In *United States v. Hale*, 422 U.S. 171, 95 S. Ct. 2133, 45 L. Ed. 2d 99 (1975), the nation's high Court held that an accused's silence during a police interrogation lacked a significant probative value so that any questioning during trial in an attempt to impeach

2

his alibi carried with it an intolerably prejudicial impact. The Supreme Court thereby affirmed the Court of Appeals' reversal of William Hale's conviction for robbery and grant of a new trial.

In *United States v. Hale*, the United States Supreme Court addressed the situation of silence after an arrest and the delivery of *Miranda* warnings. Nevertheless, the reasoning applies to employment of silence or facial expressions as evidence under other circumstances. The Court observed that, in most circumstances, silence is so ambiguous that it is of little probative force. A variety of reasons may influence the accused's decision to remain mute. Under emotional and confusing circumstances, a suspect may not hear or fully understand the question or may have felt no need to reply. The accused may simply react with silence in response to the hostile and perhaps unfamiliar atmosphere when confronted by an accusatory law enforcement officer. Moreover, evidence of silence holds a significant potential for prejudice. The jury may assign much more weight to the accused's previous silence than warranted. Permitting the defendant to explain the reasons for his silence will unlikely overcome the strong negative inference that the jury draws from the fact that the suspect remained silent when accused.

During trial, Jeremy Alvarez sought exclusion of the law enforcement's testimony to Alvarez's reaction following the accusation on relevance and undue prejudice grounds.

3

No. 35567-5-III
*State v. Alvarez*

Nevertheless, Alvarez does not assign error on appeal to the introduction of evidence of his facial expressions or silence on such grounds.

I agree with my concurring sister that, if we held the silence or facial expressions of Jeremy Alvarez to be inadmissible evidence, the testimony would not be harmless.

_____
Fearing, J.

4